PEOPLE v WHITE

Docket No. 303228. Submitted September 13, 2011, at Lansing. Decided
     November 15, 2011, at 9:00 a.m. Affirmed, 493 Mich ___.

Kadeem Dennis White was charged in the Jackson Circuit Court
with first-degree felony murder, MCL 750.316(1)(b), armed rob-
bery, MCL 750.529, and possession of a firearm during the
commission of a felony, MCL 750.227b, in connection with the
shooting death of Benjamin Willard. Before trial, defendant filed a
motion to suppress his inculpatory statement to the police. He
argued that the statement should have been suppressed because it
was made after asserting his right to remain silent and was made
in response to a detective's statement that had been the functional
equivalent of interrogation under *Rhode Island v Innis*, 446 US
291 (1980). The court, Thomas D. Wilson, J., granted the motion to
suppress, finding that although the detective's statement had not
been express questioning, it was the functional equivalent because
the only reason for making the comment had been to elicit a
response. The prosecution appealed the decision by delayed leave
granted.

The Court of Appeals *held*:

Statements made during custodial interrogations that the
defendant did not volunteer are admissible only if a suspect
voluntarily, knowingly, and intelligently waived his or her Fifth
Amendment rights. Interrogation of a suspect in custody can be
through express questioning or its functional equivalent, which
is defined as any words or actions on the part of police officers
that they should have known were reasonably likely to elicit an
incriminating response from the suspect. The focus should be
on the suspect's perception, rather than the intent of the police,
there must be no evidence suggesting that the police were aware
that the suspect was peculiarly susceptible to an appeal to a
suspect's conscience or was unusually disoriented or upset at
the time, and the conversation must have been short with no
lengthy or passionate speech. The trial court's determination
that the detective had not expressly questioned the defendant
after he invoked his right to an attorney was not clearly
erroneous. The trial court also did not err by finding that the

detective's statements did not constitute the functional equivalent of interrogation. Before defendant's inculpatory statement, the detective specifically informed defendant that he was not asking defendant any questions, but was merely telling defendant that he hoped the gun used in the charged offense was in a place where no one could find it and be hurt. Nothing in the record indicated that the detective was aware of any peculiar susceptibility of defendant, and the detective had not made a lengthy speech. Given these facts, the detective would not have reasonably expected that defendant would suddenly make a self-incriminating statement in response to the remark.

Reversed.

SHAPIRO, P.J., dissenting, would have affirmed the trial court's order to suppress defendant's statement, concluding that the detective's actions constituted express questioning, or at least its functional equivalent. The detective's comments were unequivocally and expressly directed to defendant, and he expressly invited a response from defendant.

CONSTITUTIONAL LAW — SELF-INCRIMINATION — CUSTODIAL INTERROGATIONS — EXPRESS QUESTIONING OR ITS FUNCTIONAL EQUIVALENT.

The right against compelled self-incrimination is guaranteed by both the United States and Michigan Constitutions; statements made during custodial interrogations that the defendant did not volunteer are admissible only if a suspect voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights; interrogation of a suspect in custody can be through express questioning or its functional equivalent, which is defined as any words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response from the suspect; the focus should be on the suspect's perception, rather than the intent of the officers; there must be no evidence suggesting that the police officers were aware that the suspect was peculiarly susceptible to an appeal to his or her conscience, or was unusually disoriented or upset at the time, and the conversation must have been short with no lengthy or passionate speech (US Const, Am V; Const 1963, art 1, § 17).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Henry C. Zavislak*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Assistant Prosecuting Attorney, for the people.

*Rappleye & Rappleye, P.C.* (by *Robert K. Gaecke, Jr.*), for defendant.

Before: SHAPIRO, P.J., and WILDER and MURRAY, JJ.

MURRAY, J. Plaintiff appeals by leave granted the trial court's March 8, 2011, order granting defendant's motion to suppress his statement to police. We reverse and remand for further proceedings.

## I. BACKGROUND

Defendant was charged with first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b, arising from the shooting death of Benjamin Willard. The prosecutor's theory was that defendant attempted to rob Willard at gunpoint and when Willard resisted, defendant shot him. After defendant was arrested, he was provided his warnings under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and he asserted his right to remain silent. In response, the following occurred between the interviewing detective (Detective Stiles) and defendant:

> [*Detective Stiles*]: Okay. [T]his is what they call the acknowledgment and waiver paragraph I'm going to read this to you. If you wish to talk to me, I'm going to need you to sign and date the form. Even though you sign and date the form, you still have your rights to stop at any time you wish. Do you understand that?
>
> [*The Defendant*]: No. No thank you sir. I'm not going to sign it.
>
> [*Detective Stiles*]: Okay. Okay. Sounds good.
>
> [*The Defendant*]: I don't even want to speak.
>
> [*Detective Stiles*]: I understand. I understand Kadeem.

Okay then. The only thing I can tell you Kadeem, is good luck man.

Okay. Don't take this personal. It's not personal between me and you, I think I may have had one contact with you on the street. Okay. I've got to do my job. And I understand you've got to [do] what you've got to do to protect your best interests. Okay.

The only thing that I can tell you is this, and *I'm not asking you questions, I'm just telling you.* I hope that the gun is in a place where nobody can get a hold [sic] of it and nobody else can get hurt by it, okay?

All right?

[*The Defendant*]: I didn't even mean for it to happen like that. It was a complete accident.

[*Detective Stiles*]: I understand. I understand.

But like I said, you, uhh, you get your attorney, man.

Hey, look dude, I don't think you're a monster, all right? I don't think that. You could have came down to me and turned yourself in and there ain't no damn way I'd beat you up.

[*The Defendant*]: Yeah.

[*Detective Stiles*]: Okay, man?

You all set, you straight with me?

Who knows you're here? Who knows of your family? Because I know a lot of your family in town now.

[*The Defendant*]: (unintelligible reply). I know that I didn't mean to do it. I guarantee that, I know I didn't mean to do it. [Emphasis added.]

Defendant moved to suppress his statement arguing that the detective's statement constituted the functional equivalent of interrogation under *Rhode Island v Innis*, 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980). The trial court agreed, focusing on the presumed purpose of the question, which was inferred

from the fact that the detective made the statement directly to defendant:

> Or where *Innis* does appear to be on point, the case concludes that Miranda safeguards are applicable whenever a person in custody is subject to either expressed questioning or its functional equivalent. Now, in this case there's no dispute that defendant was in custody and I think anybody reviewing the tape would find that *the officer's statement was not expressed questioning, not in the way that it was worded.* Then we come to the other portion where the Court identified the functional equivalent, any words or actions on part of the police other than those normally intended to arrest in custody, that the police should know or reasonably likely to elicit an incriminating response for the suspect. . . . *The ultimate question is whether the officer should have known that such a response would be the result of his statement. And, in this particular case it's difficult to find another reason for making the statement, the officer made the statement while looking directly at the defendant.* . . . Now, (Inaudible) – made distinction in Innis is that the officers were speaking to each other. *Here the officer and the defendant were the only ones in the room, it may have been reasonable to make a similar statement to any other person within the defendant's hearing and not expect a response, but when the statement is made directly to the defendant while looking directly at him it suggest* [sic] *that the remark was designed to elicit a response as to the location of the gun.* Therefore, the [c]ourt is granting the motion to suppress on self-incrimination grounds. *The only reasonable interpretation of the officer's statement at that point appears to be* [de]*signed to elicit information about the location of the gun.* The information qualifies as an incriminating statement and the statement qualifies as the functional equivalent of expressed questioning, because it occurred after the defendant invoked his right to remain silent. It must be suppressed, however it can be used for impeachment purposes should your client take the witness stand. [Emphasis added.]

Based on this ruling on the record, the trial court ordered defendant's subsequent statements suppressed. It is from that order that we granted leave to appeal.

## II. ANALYSIS

This Court reviews a trial court's ruling on a motion to suppress evidence for clear error; it reviews attendant questions of law de novo. *People v Hawkins*, 468 Mich 488, 496; 668 NW2d 602 (2003); *People v Sobczak-Obetts*, 463 Mich 687, 694; 625 NW2d 764 (2001); *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). What this means is that if factual findings are made by the trial court in relation to the motion to suppress, we defer to those findings by use of the clearly erroneous standard of review. *People v Kowalski*, 230 Mich App 464, 471-472; 584 NW2d 613 (1998). The application of those facts to the constitutional provision at issue—the Fifth Amendment to the United States Constitution—is a legal determination to which we owe no deference to the trial court, and therefore we apply a de novo standard of review to the ultimate conclusion. *Id.*; see also *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999), quoting *People v Nelson*, 443 Mich 626, 631 n 7; 505 NW2d 266 (1993) (" 'Application of constitutional standards by the trial court is not entitled to the same deference as factual findings.' ").

The right against compelled self-incrimination is guaranteed by both the United States and Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 17; *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). Non-volunteered statements made during custodial interrogations are admissible only if a defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *People v Akins*, 259 Mich App

545, 564; 675 NW2d 863 (2003). There is no dispute that defendant was in custody at the time he made the statement, and that he had previously invoked his right to remain silent. Thus, the only question is whether the trial court erred by concluding that the detective's comments to defendant regarding the location of the gun constituted the "functional equivalent of interrogation."

We agree with the prosecution that the United States Supreme Court's decision in *Innis*, 446 US at 291, mandates reversal of the trial court's order suppressing defendant's statement. In *Innis*, three police officers were transporting the respondent to the police station following his arrest. While en route, one of the officers commented that "there's a lot of handicapped children running around in this area, and God forbid one of them might find a weapon with shells and they might hurt themselves," and that it would be "too bad" if a girl picked up the gun used in the armed robbery in which the respondent was a suspect and killed herself. *Id.* at 294-295. A second officer also expressed his concern about the location of the weapon. *Id.* at 295. The respondent, having previously been advised of his *Miranda* rights, "interrupted the conversation, stating that the officers should turn the car around so he could show them where the gun was located." He then directed the officers to the gun, which he had hidden in a field near the location of his arrest. *Id.* at 294-295.

The Supreme Court concluded that the respondent was not subjected to interrogation, within the meaning of *Miranda*, when being subjected to the conversation between the officers. *Innis*, 446 US at 302-303. The Court first explained that

the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its

functional equivalent. That is to say, the term "interroga-
tion" under *Miranda* refers not only to express question-
ing, but also to any words or actions on the part of the
police (other than those normally attendant to arrest and
custody) that the police should know are reasonably likely
to elicit an incriminating response from the suspect. The
latter portion of this definition focuses primarily upon the
perceptions of the suspect, rather than the intent of the
police. This focus reflects the fact that the *Miranda* safe-
guards were designed to vest a suspect in custody with an
added measure of protection against coercive police prac-
tices, without regard to objective proof of the underlying
intent of the police. A practice that the police should know
is reasonably likely to evoke an incriminating response
from a suspect thus amounts to interrogation. But, since
the police surely cannot be held accountable for the unfore-
seeable results of their words or actions, the definition of
interrogation can extend only to words or actions on the
part of police officers that they *should have known* were
reasonably likely to elicit an incriminating response. [*Id.* at
300-302].

It then concluded that the respondent was not "inter-
rogated" as contemplated by *Miranda*:

It is undisputed that the first prong of the definition of
"interrogation" was not satisfied, for the conversation
between [the officers] included no express questioning of
the respondent. Rather, that conversation was, at least in
form, nothing more than a dialogue between the two
officers to which no response from the respondent was
invited. [*Id.* at 302.]

With respect to whether the respondent was subject
to the "functional equivalent" of questioning (which is
what the trial court in our case found), the *Innis* Court
held that given (1) there was no evidence suggesting the
police were aware that respondent was peculiarly sus-
ceptible to an appeal to his conscience or that respon-
dent was unusually disoriented or upset at the time, (2)
the conversation consisted of only a few short remarks,

(3) there was not a "lengthy harangue" in the presence of the respondent and (4) the comments were not particularly evocative, the officers should not have known that the respondent would move to make a self-incriminating statement:

> The case thus boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response. Given the fact that the entire conversation appears to have consisted of no more than a few off hand remarks, we cannot say that the officers should have known that it was reasonably likely that Innis would so respond. This is not a case where the police carried on a lengthy harangue in the presence of the suspect. Nor does the record support the respondent's contention that, under the circumstances, the officers' comments were particularly "evocative." It is our view, therefore, that the respondent was not subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him. [*Innis*, 446 US at 303.]

Since *Innis* a number of cases have established that in general an officer's statements that provide a defendant with information about the charges against him, about inculpatory evidence located by the police, or about statements made by witnesses or codefendants, which allow a defendant to make an informed and intelligent reassessment of his decision whether to speak to the police, do not constitute interrogation. See *Kowalski*, 230 Mich App at 468, 483-484; *People v McCuaig*, 126 Mich App 754, 759-760; 338 NW2d 4 (1983); *United States v Hurst*, 228 F3d 751, 760 (CA 6, 2000).[1]

---

[1] In our order granting leave to appeal, this Court directed the parties to address "the application of *New York v Quarles*, 467 US 649 [104 S Ct 2626; 81 L Ed 2d 550] (1984) and its progeny to the facts of this case." Upon further review, we agree with the parties that the public safety

Here, the trial court found that the detective did not expressly question defendant after he invoked his right to silence, a finding that is not clearly erroneous, so we are left to apply the *Innis* considerations in determining whether the detective engaged in "its functional equivalent." *Innis*, 446 US at 300-301. Keeping in mind the type of "psychological ploys" that the *Innis* and *Miranda* courts were concerned about when addressing tactics that may be the functional equivalent of express questioning, see *Innis*, 446 US at 299-302, *Miranda*; 384 US at 453-455; *United States v Kimbrough*, 477 F3d 144, 148 (CA 4, 2007), we hold under these facts that Detective Stiles's comment did not constitute the functional equivalent of express questioning.

Or, stated in the terms of the test articulated by the *Innis* court, we conclude that Detective Stiles should not have known that defendant would suddenly make a self-incriminating statement in response to his one remark. *Innis*, 446 US at 302. The Supreme Court tells us that our focus should primarily be on the perception of defendant, rather than the intent of Detective Stiles. *Pennsylvania v Muniz*, 496 US 582, 601-602; 110 S Ct 2638; 110 L Ed 2d 528 (1990).[2] For one, the detective specifically told defendant that he was *not* asking him any questions, but was instead "telling" him that he hoped the gun was not found by anyone who could get hurt. Hence, in reviewing what defendant would have perceived from the statement in its context, the use of "okay" and "all right" can reasonably be seen as seeking confirmation from defendant that he heard the cursory comment, and not to elicit a response. *People v*

---

exception set forth in *Quarles* and its progeny was not implicated by the facts and circumstances presented here.

[2] Detective Stiles intent would be relevant if it revealed his awareness of any particular sensitivity defendant had to the statement made, *Muniz*, 496 US at 601, but there is no evidence on this issue.

*Raper*, 222 Mich App 475, 480-481; 563 NW2d 709 (1997). Thus, Detective Stiles did not direct any question to defendant, but merely articulated his concern to him.

Additionally, nothing in the record suggests that the detective was aware of any peculiar susceptibility of defendant (or that he even had any). So, focusing on what defendant would have perceived from the statement in its context, we can only conclude that Detective Stiles should not have reasonably expected defendant to make an incriminating statement. After all, Detective Stiles had already told defendant both that he was not asking a question and that he understood defendant's invocation of his right to remain silent. Amidst these other permissible comments—and absent any known sensitivities of defendant—it would not be reasonable to conclude that the one comment about the possibility of the gun being located and endangering others would result in a statement about the crime itself. Just as importantly, this "is not a case where the police carried on a lengthy harangue in the presence of" defendant, nor was Detective Stiles's comment "evocative." *Innis*, 446 US at 302-303. And these latter two points make any distinction between a direct remark made to defendant and a defendant overhearing remarks between police as in *Innis* insufficient to come to a different constitutional conclusion. See *Fleming v Metrish*, 556 F3d 520, 527 (CA 6, 2009).

The dissent asserts that we have applied different standards of review to the two conclusions of the trial court.

We again note the well-settled principle that in an appeal of an order denying or granting a motion to suppress, our review of any findings of fact is for clear error. *People v Attebury*, 463 Mich 662, 668; 624 NW2d

912 (2001). But, to the extent that we must apply uncontested facts to constitutional standards, our review is de novo. *Id*. Here, in deciding whether the detective asked defendant an express question, we are not guided by constitutional or other legal standards. Instead, whether a question was asked involves a fact-intensive inquiry that must be made by the trial court in the first instance. Hence, we apply the clear error standard to that finding. *Raper*, 222 Mich App at 481 (clearly erroneous standard applied by this Court in reviewing factual findings that express questioning did not occur).

Because the only evidence submitted to the trial court on the motion to suppress was the audio/video disk, and that is something that we can review as easily as the trial court, the clearly erroneous standard may not even apply to the trial court's finding that defendant was not subjected to express questioning. See *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130 n 1; 743 NW2d 585 (2007), citing *People v Zahn*, 234 Mich App 438, 445-446; 594 NW2d 120 (1999) (courts need not defer when the trial court reviewed the same record as this Court). Even under a de novo review of the evidence, however, we conclude, as did the trial court, that no express questioning occurred. After defendant invoked his right to remain silent, the detective informed defendant that he was not asking anymore questions and was only going to make a statement. The brief statement was made, and though the detective stated "okay" and "alright" after the statement, the video makes clear that in context the detective was seeking affirmation that defendant heard the statement, not that he was seeking a response to the statement. And the detective's response once defendant blurted out an incriminating statement shows he had not intended that there be any sort of substantive

response to the statement. Consequently, there was no express questioning of defendant.

As far as whether the detective engaged in the "functional equivalent" of questioning, this requires application of a constitutional standard articulated by the *Innis* court to the undisputed facts. These undisputed facts include that no express question was asked by the detective—a necessary factual finding—for if an express question was asked, there would be no need to determine if its functional equivalent occurred. In any event, since we review de novo the application of a constitutional standard to undisputed facts, our standard of review on this issue is different than that applicable to the initial question of whether an express question was asked. And, of course, as the parties themselves recognize, the ultimate decision on a motion to suppress is reviewed de novo. *People v Darwich*, 226 Mich App 635, 637; 575 NW2d 44 (1997).

The dissent's disagreement with our conclusion that the detective did not engage in the functional equivalent of express questioning is based primarily upon the fact that a "word of inquisition" was added at the end of his statement, that there was a pause after the statement, and that the comments were made directly to defendant when defendant was alone with the detective. These factors are unconvincing. For one, they do not address the factors outlined in *Innis*, i.e., there is no suggestion by the dissent that the detective should have known that defendant "would suddenly be moved to make a self-incriminating response," *Innis*, 446 US at 303, or that the detective carried on a "lengthy harangue" of defendant, *id*, or that the statement was "particularly 'evocative.'" *Id*. These factors were critical to the Supreme Court's creation of the functional equiva-

lent standard, *Kimbrough*, 477 F3d at 150-152, and the dissent simply does not address them.

Additionally, the federal courts have repeatedly held that revealing evidence or other facts directly to the defendant does not constitute the functional equivalent of questioning, absent any of the other *Innis* criteria. See, for example, *Fleming*, 556 F3d at 527; *Acosta v Artuz*, 575 F3d 177, 191-192 (CA 2, 2009), and cases cited therein. It is certainly commonplace for a police officer to inform a defendant—after invoking his right to remain silent—about facts surrounding the investigation, possible penalties from a conviction, etc, and nothing in the brief comment by the detective supports a conclusion that defendant was interrogated in violation of *Miranda*. The fact that one could glean some "subtle compulsion" from the circumstances surrounding the statement is not enough, as a matter of law, to find interrogation. *Arizona v Mauro*, 481 US 520, 528-529; 107 S Ct 1931; 95 L Ed 2d 458 (1987); *Innis*, 446 US at 300-303; *Kimbrough*, 477 F3d at 148-152.[3]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

WILDER, J., concurred with MURRAY, J.

SHAPIRO, P.J. (*dissenting*). Because the detective's actions constituted express questioning, or at the very least, the functional equivalent thereof, I would affirm the trial court's suppression of defendant's statements. Therefore, I respectfully dissent.

---

[3] The dissent's concern that the prosecution offered no explanation for why the statement was made, implying that "why else would the police do that" other than to obtain a response, is not a relevant consideration under the law. *United States v Fortes*, 2008 WL 4219493 (D RI, 2008).

After defendant was arrested he was transported to the police station and placed in an interrogation room.[1] After several minutes, a detective entered the room. He advised defendant of his *Miranda*[2] rights and defendant unequivocally asserted his right to remain silent. Defendant declined to sign the acknowledgement and waiver form, stating: "No thank you sir. I'm not going to sign it. . . . I don't even want to speak." Rather than terminating the interview at that time, the interviewing detective then said:

> Okay then. The only thing I can tell you Kadeem, is good luck man. Okay. Don't take this personal. It's not personal between me and you. I think I may have had one contact with you on the street. Okay. I've got to do my job. And I understand you've got to do what you've got to [do] to protect your best interests. Okay. The only think I can tell you is this, and I'm not asking you questions, I'm just telling you. I hope that the gun is in a place where nobody can get a hold of it and nobody can get hurt by it, okay?

These remarks were followed by a pause of several seconds during which the detective remained at the table, opposite defendant. The officer then said "all right?" and at that point, defendant made an inculpatory statement.

The parties do not dispute the facts and as noted, the events were recorded.[3] The facts being uncontested, the matter is purely one of law, i.e., the application of a

---

[1] The interrogation room was equipped with a video camera. The recording of the interaction between the investigating officer and defendant is part of the record and was reviewed by the trial court and by this Court.

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] While both we and the trial court have reviewed the videotape, a transcript was also provided by defense counsel and no objection to the transcript was made by the prosecution.

constitutional standard to uncontested facts and so our review is de novo. *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).[4]

The dispositive case in this matter is *Rhode Island v Innis*, 446 US 291; 100 S Ct 1682; 64 L Ed 2d 297 (1980). In *Innis*, three police officers were transporting the defendant to a police station following his arrest. While en route, one of the officers commented to another officer that "there's a lot of handicapped children running around in this area, and God forbid one of them might find a weapon with shells and they might hurt themselves," and that it would be "too bad" if a girl picked up the gun used in the armed robbery of which the defendant was a suspect and killed herself. *Id.* at 294-295. A second officer also expressed his concern about the location of the weapon. *Id.* at 295. The defendant, having been previously advised of his *Miranda* rights on three separate occasions, "interrupted the conversation, stating that the officers should turn the car around so he could show them where the gun was located." He then directed the officers to the gun, which he had hidden in a field near the location of his arrest. *Id.* at 294-295.

The United States Supreme Court concluded that the defendant was not subjected to interrogation, within

---

[4] The majority appears to apply differing standards of review to the trial court's conclusions whether express questioning occurred and whether the functional equivalence of questioning occurred. On the issue of express questioning the majority opines that the clear error standard of review of that conclusion is appropriate, while it reviews de novo the issue of the functional equivalence of questioning. What we are to review is the trial court's conclusion that the officer violated the defendant's explicitly asserted right to remain silent and the facts are wholly undisputed. Thus, there is no basis to apply different standards of review as to the trial court's conclusions regarding what constitutes explicit questioning as opposed to what constitutes the functional equivalence of questioning.

the meaning of *Miranda*, by virtue of the conversation between the officers. *Id*. at 302-303. Such is not the case here. While the detective's comments to defendant were similar in content to comments made during the conversation between the officers in *Innis*, unlike in that case, here they were expressly and unequivocally directed to defendant. Further, in *Innis*, the Court found that "[t]he record in no way suggest[ed] that the officers' remarks were *designed* to elicit a response" from the defendant. *Id*. at 303 n 9. In contrast, in this case the detective expressly invited a response from defendant, by speaking directly to him, looking directly at him, by adding the question "okay?" at the end of his comment regarding the location of the gun and then pausing for several seconds as if waiting for a response. The detective's preface that he was "not asking questions" is belied by the fact that he asked defendant a question. To permit officers to ask direct questions of defendants so long as they preface it with "I'm not asking you any questions, but . . ." is to make a mockery of *Miranda*. The detective and the defendant were the only persons present in the room at the time of the interview; the detective looked directly at, and spoke directly to, defendant; and the detective concluded his remarks regarding the location of the gun with the question "okay?" These undisputed facts all support the conclusion that the detective's remarks constituted express questioning.[5]

---

[5] The majority notes that in two cases we have held it permissible, after the right to remain silent has been asserted, for an officer to "provide a defendant with information about the charges against him, about inculpatory evidence located by the police, or about statements made by witnesses or codefendants, which allow a defendant to make an informed and intelligent reassessment of his decision whether to speak to the police . . . ." *Ante* at 630. However, the officer's comments in this case did not provide defendant with information about the charges against him, about inculpatory evidence the police possessed, or about witness

Moreover, even if the detective's remarks could, somehow, be construed as not asking defendant a question, the detective's remarks certainly constituted the functional equivalent of express questioning. In *Innis*, the Supreme Court instructed that the intent of the police is relevant to the extent that "it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response." *Innis*, 446 US at 301 n 7. Indeed, the conclusion that the defendant had not been interrogated in *Innis* was based, in part, on the policy decision that "the police surely cannot be held accountable for the unforeseeable results of their words or actions . . . ." *Id.* at 301-302. Rather, "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* at 302.

The content of the detective's comments, including the word of inquisition added at the end, followed by the pause of several seconds, together with the fact that the comments were made directly to defendant and in the presence only of defendant, demonstrate that the detective knew or should have known that his comments and actions were reasonably likely to elicit a response from defendant. Indeed, it is difficult to conceive of another reason and notably, no other reason has been proffered by the prosecution. "A party may not merely announce

statements. The officer's comments did not offer any new information that could provide a basis for an intelligent reassessment of the defendant's decision to remain silent. Moreover, unlike in this case, in *People v Kowalski*, 230 Mich App 464; 584 NW 2d 613 (1998) (cited by the majority to support this argument), it was only after more than an hour had passed and defendant had spoken to a friend on the phone that the police gave defendant an opportunity to "reassess" whether he wanted to speak with the officers.

a position and leave it to this Court to discover and rationalize the basis for the claim." *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007).

The detective engaged in either explicit questioning or the functional equivalence of questioning and the trial court properly suppressed the defendant's statements. I would affirm.