*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ADEYO JAMES ILEMOBADE, Minor.

|  |  |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | UNPUBLISHED |
| Petitioner-Appellee, | August 17, 2023 |
| v | No. 360868 |
| | Leelanau Circuit Court |
| ADEYO JAMES ILEMOBADE, | Family Division |
| Respondent-Appellant. | LC No. 2021-010732-DL |

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Respondent appeals by leave granted[1] the circuit court's order denying respondent's motion to suppress evidence obtained from his cell phone through a search warrant. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY[2]

On Saturday, July 10, 2021, at approximately 3:40 a.m., the victim was walking home from a friend's house in Traverse City, Michigan. The victim passed a group of individuals, and one of the individuals asked the victim to place a phone call for him. The victim did so, but there was no answer. The victim continued to walk southbound toward his residence when he heard someone running up from behind him. The victim became concerned, began to walk at a faster pace, and crossed from the sidewalk into the middle of the street.

---

[1] See *People v Ilemobade*, unpublished order of the Court of Appeals, entered October 17, 2022 (Docket No. 360868).

[2] An evidentiary hearing was not held in the circuit court. Our factual summation is derived from the parties' briefs, police reports, search warrant, and warrant affidavit.

-1-

When the victim perceived the approaching individual was nearby, the victim turned and saw a black male with lighter skin tone and an athletic build, weighing approximately 180 pounds and standing 6'3". The assailant, later alleged to be respondent, was wearing a mask over his face, a blue-hooded sweatshirt with the hood up, and shorts. Respondent demanded that the victim, "Give me your wallet," three times, and each time, respondent lunged at the victim with a shiny object that was 3 to 4 inches in length. The victim removed his cell phone with a wallet case from his pocket and tossed it at respondent. Respondent caught the phone, and each ran in opposite directions. Once the victim arrived home, he called 911 to report the robbery. The robbery occurred during a city festival, and the state police had video surveillance in operation at the time. Accordingly, the victim's walk, his route, and respondent's pursuit of the victim were captured on surveillance video although the robbery itself took place outside of camera view.

The victim had three credit cards in his phone case. At 6:33 p.m., within fifteen hours of the robbery, someone attempted to make a purchase with the victim's credit card at a Rite Aid store in Kalkaska, but the transaction was declined. At 6:42 p.m., the same individual attempted to make a purchase at a Dollar General store, which was also declined. Video surveillance from the stores revealed that a black male wearing a black hooded sweatshirt, black sweatpants, black ball cap, black face mask, white socks, and black and white New Balance shoes attempted to purchase a Visa gift card at both stores. The police recovered video surveillance near the time of the attempted stolen credit card transactions from a store owner in the Northland grocery center. The individual who attempted to use the victim's credit cards was observed outside of a store at the Northland grocery center and then entered the passenger side of a silver Volvo.

On July 24, 2021, two weeks after the robbery, the silver Volvo was observed in a Grand Traverse store parking lot being driven by a younger white male. The police contacted the Volvo's registered owner, and she advised that the vehicle was driven by her son. The son told the police that he picked up respondent on July 10, 2021, from the Traverse City area and drove him to the Northland grocery center. The son identified respondent on the video surveillance from the grocery center. He also told the police that respondent communicated by phone calls and text messages and provided respondent's cell phone number.

This factual scenario served as the foundation for Traverse City Detective Tim Smith's affidavit and request for a search warrant. The detective indicated that he had worked in law enforcement for 24 years, and currently investigated major crimes in the city. The warrant requested a search warrant for respondent's property, including internet devices and files on those devices. The warrant expressly identified respondent's cell phone and sought access to text messages, storage data files, and application software. Detective Smith justified his request for the search of the electronic devices, stating:

19. Affiant is aware from training and experience that persons involved in criminal activity often utilize the internet, phone, and/or computer applications as a resource in criminal activity and credit card fraud. Additionally, affiant is aware from training and experience that smart phones and laptop computers often share files wirelessly including records of calls, text, images, and web searches.

The search warrant was authorized on July 27, 2021, for a search of respondent and any and all electronic devices and cellular communication devices found on his person, or within his immediate control. The warrant further provided:

B. The PROPERTY to be searched for and seized, if found, is specifically described as:

1. Any and all internet communication device(s) and storage medium(s) of all makes and kinds that are computer or internet compatible and all their peripherals and attachments, whatever their function; this includes computers, laptops, phones, pads, gaming devices and all similarly internet compatible devices;

2. This warrant to also specifically include the files within those devices including but not limited to electronic or magnetic data files or the identity of the owner/user of these devices;

3. Any application software or other programs which could be used to facilitate the creation, transmission or storage of the described data files, including but not limited to photo editing software, e-mail applications, word processing software, and/or software used to access the internet;

4. Any passwords or password files necessary to gain access to the files, software, or applications described above;

5. Trace evidence of any of the above types of data files which may remain on the internal memory of any computer, cell phone, or digital camera, or on removable storage media, after files have been deleted. Magazines, books, printed material, removable media including floppy disks, CD-ROM's, DVD's, zip disks, external drives, cell phones and contents of cell phones;

6. Computers, including personal computers, computer systems, central processing units, and computer peripheral devices, any electronic, magnetic, optical, electrochemical, or other high speed data processing and storage devices performing logical, arithmetic, or storage functions; data storage facilities (internal and/or peripheral) or media storage devices such as magnetic tape, hard disk drives, floppy disks, CD-ROM or scanner;

7. Data stored within computers, cell phone or other processing and storage devices, to include computer applications, images, text, programs, encryption routines and algorithms, or other data that may be decoded, reconstituted, or otherwise manipulated to produce, utilize, transmit, receive, encrypt, encode, or display such images, text, programs, encryption routines, and algorithms. Computer manuals, documents, logs and system documentation or instructional material including passwords, passphrases or other material whether handwritten, printed, or in book form, relating to such devices and printers;

8. Electronic communications stored within the cell phone or other processing and storage devices as email and SMS or MMS messages. Such

-3-

information and/or communications that may be in the form of electronic communications (such as e-mail) residing on any media (e.g., magnetic, optical or digital media). That information may include electronic communications held or maintained in electronic storage by an electronic communication service or remote computing service, as those services are defined within 18 U.S.C. 2703. These communications are referred to herein as "stored communications". These communications related to this case stored in the suspect's computer or other electronic devices as e-mail. That federal law, which is part of the Electronic Communications Privacy Act, allows interception of such electronic communication pursuant to a search warrant. Printed copy(s) of electronic communications between suspect and conspirators, known or unknown. Mail or any other documentation in any form or medium of the resident(s) of the address and/or the owner/users of the electronic/digital devices.

The search was conducted on July 27, 2021, and the police recovered a white iPhone SE. Data extracted from respondent's cell phone calculated his steps and distance traveled at the time of the robbery on July 10, 2021. Additionally, the data determined that respondent's cell phone had "journeyed" to the Rite Aid in Kalkaska at the time of the attempted credit card transaction. Also, a phone call was placed between respondent's phone and the Volvo owner's son's phone shortly after the police interviewed the son.

On July 10, 2021, respondent's cell phone was used to search for "Gift Cards," "CVS," and "Pharmacies." On July 27, 2021, the phone searched for information on "How to know if detectives are looking for you, Why would detectives go to a friend's house, How to know if police have a warrant for my arrest, Armed robbery in Traverse City, First offense, First offense robbery, Armed robbery as a minor, Detective SOFFREDINE in Traverse City." Further, there were data files consisting of photographs of respondent and others around the silver Volvo. There were also photographs of a cellular device that correlated to the victim's cell phone.

A petition was filed in the family division against respondent, alleging he committed armed robbery, MCL 750.529. Respondent moved to suppress the cell phone evidence, submitting that the search of his cell phone exceeded the scope of the search warrant and the search warrant was too broad, which rendered it an impermissible general warrant. After a hearing,[3] the circuit court issued a written decision and order on respondent's motion. The court found that the probable-cause requirement for obtaining the search warrant was met; therefore, the search and seizure of respondent's cell phone for credit card fraud was authorized. Additionally, the circuit court

---

[3] Although the robbery occurred in Traverse City and the attempted credit card use occurred in Kalkaska, the petition was transferred to Leelanau County, the location of respondent's residence. The prosecutor later filed an amended petition, charging respondent with armed robbery, MCL 750.529, possession of another's financial transaction device with intent to use, MCL 750.157p, and illegal sale or use of a financial transaction device, MCL 750.157q. However, there was no indication that the amended petition was authorized by the circuit court. At the hearing on the suppression motion, the prosecutor noted that a plea offer had been conveyed that eliminated an amendment to the petition that added the financial transaction charges.

rejected respondent's argument that the search was limited to obtaining information related to the alleged credit card fraud. The circuit court found that the affidavit adequately described the other " 'criminal activity' " in paragraphs 2 to 9, which "cover the additional crimes of robbery, assault, and/or theft alleged to have occurred on July 10, 2021." And, it determined that the correlation between the robbery and the credit card fraud was established by the communication between respondent and the Volvo owner's son. The court denied respondent's motion to suppress. This appeal followed.

## II. STANDARD OF REVIEW

The circuit court's ultimate ruling on a motion to suppress is reviewed de novo. *People v Wheeler*, 336 Mich App 361, 365; 970 NW2d 438 (2021). The court's factual findings made when addressing a motion to suppress are reviewed for clear error. *People v Hill*, 299 Mich App 402, 405; 829 NW2d 908 (2013). Accordingly, this Court defers to the trial court's factual findings in relation to the motion to suppress, but it gives no deference to the trial court's application of those facts to the constitutional provision at issue—the Fourth Amendment to the United States Constitution. *People v White*, 294 Mich App 622, 627; 823 NW2d 118 (2011).

## III. ANALYSIS

Respondent first contends that the circuit court erred in concluding that the search of respondent's phone did not exceed the scope of the search warrant and did not violate his Fourth Amendment rights. Specifically, he submits that the scope of the warrant was limited to evidence addressing credit card fraud, but the police went on a "fishing expedition" to search for evidence of armed robbery contrary to the Fourth Amendment. We disagree.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

Similar protections are found in the Michigan Constitution. Const 1963, art 1, § 11.[4] Evidence obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in a criminal proceeding. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). "[R]easonableness is always the touchstone of Fourth Amendment analysis." *People v Hughes*, 506 Mich 512, 524; 958 NW2d 98 (2020) (quotation marks and citation omitted). "[T]he general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *Id*. at 525. Indeed, "officers must generally obtain a warrant before conducting a

---

[4] "The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause supported, by oath or affirmation."

search of cell-phone data." *Id.*, citing *People v Riley*, 573 US 373, 386; 134 S Ct 2473; 189 L Ed 2d 430 (2014).

A search warrant may only issue when there is a probable cause showing, and probable cause to issue a search warrant exists "if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the location to be searched." *People v Malone*, 287 Mich App 648, 663; 792 NW2d 7 (2010). When there is a challenge to the search warrant, this Court must examine both the search warrant *and* the underlying affidavit in a common-sense and realistic manner. See *id.* "A search warrant . . . must state with particularity not only the items to be searched and seized, but also the alleged criminal activity justifying the warrant." *Hughes*, 506 Mich at 538. A finding of reasonable or probable cause shall be premised on all the facts contained within the affidavit. MCL 780.653. "The warrant shall either state the grounds or the probable or reasonable cause for its issuance or shall have attached to it a copy of the affidavit." MCL 780.654(2). "That is, some context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected, for even particularized descriptions will not always speak for themselves in evidencing criminality." *Hughes*, 506 Mich at 538.

"[A] warrant authorizing the police to seize and search cell-phone data allows officers to examine the seized data only to the extent reasonably consistent with the scope of the warrant." *Hughes*, 506 Mich at 529. "Any further review of the data beyond the scope of that warrant constitutes a search that is presumptively invalid under the Fourth Amendment, absent some exception to that amendment's warrant requirement." *Id.* at 537. Indeed, "a search of digital data from a cell phone must be reasonably directed at uncovering evidence of the criminal activity alleged in the warrant and . . . any search that is not so directed but is directed instead toward finding evidence of *other* and *unrelated* criminal activity is beyond the scope of the warrant." *Id.* at 538 (quotation marks and citation omitted).

Contrary to defendant's assertion, reversal is not warranted premised on the *Hughes* decision. In *Hughes*, there was evidence that the defendant engaged in a drug sale as well as a robbery. However, a warrant affidavit was prepared to search the defendant's property for evidence related to separate criminal allegations of drug trafficking in light of information from a confidential informant. *Hughes*, 506 Mich at 518-519. The affidavit further cited to the affiant's experience and training that mobile phones aided drug trafficking activities. It was determined that there was probable cause to issue the search warrant, and an extraction of digital data from the defendant's cell phone occurred. *Id.* at 519-521. A month after the initial extraction, the prosecutor requested that a search of the cell-phone data occur for evidence pertaining to the armed robbery. *Id.* at 521-522. But, the search warrant affidavit only correlated the cell phone to drug activity. *Id.* at 519-520. Because the police were only authorized to seize and search cell-phone data to the extent authorized by the warrant, review beyond the scope of the warrant was presumptively invalid. *Id.* at 537.

In the present case, respondent acknowledged that paragraph 19 of the affidavit referred to evidence of credit card fraud. However, a search warrant must identify, with particularity, the alleged criminal activity justifying the warrant, and the finding of reasonable or probable cause must be premised on *all the facts* contained within the affidavit. See MCL 780.653; *Hughes*, 506 Mich at 538. Respondent fails to recognize that the affidavit provided a thorough explanation of

the armed robbery that preceded the attempted fraudulent use of the victim's credit cards. The affidavit delineated that the victim was walking home when respondent rapidly approached him. When the victim turned toward respondent, respondent demanded the victim's wallet three times and lunged at the victim each time with a shiny 3 to 4 inch object. This caused the victim to toss his cell phone and wallet case at respondent and to flee in the opposite direction. The victim called 911 from his home, and the use of the victim's credit cards later that day, allegedly by respondent, was rejected. Thus, the affidavit contained an extensive fact section that included information about the armed robbery.

Additionally, the affidavit indicated that respondent contacted the Volvo owner's son "through texting and phone calls" on July 10, 2021, hours after the robbery and at approximately the same time as respondent attempted to use the stolen credit cards. The connection between the robbery and respondent's use of his cell phone at or around the time he tried to use proceeds of the robbery demonstrated a fair probability that contraband or evidence of a crime would be found on respondent's cell phone. Moreover, despite respondent's argument that paragraph 19 limits the search warrant to credit card fraud, the paragraph also broadly references "criminal activity," which, when read in the context of the entire affidavit, can reasonably be interpreted as referencing the armed robbery. Therefore, the trial court did not err when it found that recovery of evidence pertaining to the armed robbery was within the scope of the search warrant.[5]

Respondent also contends that the circuit court erred in failing to conclude that the search warrant did not state with particularity the places to be searched rendering it a general warrant contrary to the Fourth Amendment. We disagree.

"The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *People v Brcic*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359497); slip op at 4 (quotation marks and citation omitted). "A search warrant is sufficiently particular 'if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify' the people and property subject to the warrant." *Id*. at ___; slip op at 4, quoting *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925). "Whether a search warrant satisfies the particularity requirement depends on the circumstances and the types of items involved." *Brcic*, ___ Mich App at ___; slip op at 4. It is "well settled that a search may not stand on a general warrant." *Id*. at ___; slip op at 4 (quotation marks and citation omitted).

---

[5] The *Hughes* Court also noted that, "[w]hether a search of seized digital data that uncovers evidence of criminal activity not identified in the warrant was reasonably directed at finding evidence relating to the criminal activity alleged in the warrant turns on a number of considerations." *Hughes*, 506 Mich at 543. Those considerations include the technology available to sort data and the ability to separate nonresponsive from responsive files. *Id*. at 543-544. Respondent did not examine or challenge the considerations delineated in *Hughes* or seek to call police witnesses to address the data collection and sorting. Because respondent's challenge was premised on the omission of armed robbery from the warrant affidavit, we do not address the *Hughes* considerations.

Respondent's sole argument addressing the particularity requirement is that the search warrant did not state with particularity the places to be searched or set forth any parameters for the search. However, the search warrant identified the person and thing to be searched as respondent and his cell phone. See *Brcic*, ___ Mich App at ___; slip op at 4. Furthermore, the warrant stated with particularity the content and data that was authorized to be searched on respondent's cell phone. It included "[a]ny and all internet communication device(s) and storage medium(s)," "the files within those devices, including but not limited to electronic or magnetic data files," "[a]ny application software or other programs which could be used . . . to access the internet," "[d]ata stored within . . . cell phone . . . devices, to include computer applications, images, texts, programs, encryption routines and algorithms, or other data that may be decoded, reconstituted, or otherwise manipulated to produce, utilize, transmit, receive, encrypt, encode, or display such images, text, programs, encryption routines, and algorithms," and "[e]lectronic communications stored within the cell phone . . . as e-mail and SMS or MMS messages." While the content to be searched was not narrow, the warrant identified the specific content that was subject to the search. Moreover, our Supreme Court has recognized that specifying the data to be searched on a cell phone is an imprecise task. See *Hughes*, 506 Mich at 540-542 (noting that a criminal suspect will not always store or organize incriminating information on his or her digital devices in the most obvious way or in a manner that facilitates the location of that information). We conclude that the warrant stated with particularity the person and thing to be searched, and it set forth certain parameters for the search as to not allow an unlimited search of respondent's cell-phone data. Therefore, the warrant did not constitute an impermissible general warrant.[6]

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[6] Respondent contends that the trial court did not rule on whether a general warrant was at issue. However, the trial court expressly noted that the contents of the affidavit in paragraphs 2-9 and 16-19 set forth the crimes of armed robbery and credit card fraud and correlated the events to the same individual.