*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

UNPUBLISHED
June 6, 2024

v

No. 367926
Wayne Circuit Court
LC No. 23-000412-01-FC

DAREN DONELL FENDERSON,

        Defendant-Appellee.

Before: SWARTZLE, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

The victim died during a "hit-and-run," and defendant voluntarily confessed to the crime after several interviews with the police. The district court admitted defendant's video confession over his motion to exclude, concluding that defendant had validly waived his right to remain silent and had made a voluntary statement. Viewing the same video, however, the circuit court suppressed the confession, finding instead that police had coerced defendant into make the confession. Our review of the record confirms that the circuit court erred, and we reverse and remand for further proceedings consistent with this opinion.

Defendant was 24-years-old at the time of his arrest, and he had completed three years of high-school education. The police attempted to conduct a custodial interrogation after arresting defendant, but could not proceed because defendant appeared to be intoxicated. The next day, the officers read defendant his constitutional rights concerning the interrogation, and defendant signed a document that explained these rights. During this initial interrogation, defendant told the officers that his truck was carjacked on the night of the victim's death, and that the carjacker was driving defendant's vehicle when the victim was killed. The officers interrupted defendant, however, and told defendant that they had surveillance-video footage that showed defendant driving the vehicle. Defendant attempted to change his story, and he agreed to tell the officers "what they wanted to hear" once he had an attorney. Interpreting this as a request for an attorney, the officers left defendant and tried to find him one.

After making several inquiries over a couple of hours, the officers were unsuccessful in finding defendant an attorney. They returned to the interrogation room, and one of the uniformed

officers handcuffed defendant for transport to a detention center. Defendant expressed confusion on being removed from the room, stating, "hold on, wait . . . wait, huh?" One of the officers explained to defendant that they could not find defendant an attorney, and he did not have funds to hire his own attorney, so they were going to return him to the detention center. Defendant questioned why he was leaving, and the officer explained that they could not talk to him because he asked for an attorney and that they would use the statement that defendant had given them earlier. The officer further explained that defendant would be returned to the detention center, and the police and prosecutor would seek an arrest warrant. The officer reiterated that he could not talk to defendant about the case because defendant had asked for an attorney. Defendant then responded, "Uhm, I just want to get this over," and he repeated this sentiment several more times.

In response, the officer explained to defendant that he did not want defendant to feel "compelled" to speak to them. Defendant asserted that he wanted to speak with the officers. Interpreting this as a request to reinitiate their conversation, the investigating officer left the room, and an officer separate from the investigation instructed defendant again about his constitutional rights. Defendant signed another form indicating that he understood his rights, and he then confessed to hitting the victim with his truck. Defendant was in the interrogation room for over five hours, but only spoke to the officers for two of those hours. When he was not speaking with the officers, defendant received food, drink, and bathroom breaks, and he was free to stand and walk around the room.

Defendant was subsequently arraigned on the charge of first-degree murder, among other charges, and bound over to the circuit court for trial with a bond that would "remain at remand, or no bond." Defendant moved to suppress his confession and argued that the officers violated his constitutional rights because he was coerced into waiving his right to counsel. The circuit court found that the officers used their inability to locate an attorney for defendant as a scare tactic to coerce defendant into continuing the interrogation. Thus, the circuit court held that defendant's confession was not voluntary, and it suppressed the statement.

The prosecutor now presents this interlocutory appeal on leave granted. *People v Fenderson*, unpublished order of the Court of Appeals, entered November 15, 2023 (Docket No. 367926).

"This Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence. A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019) (citations omitted). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id*. (citation omitted).

The United States Supreme Court has "established procedures designed to safeguard" a defendant's Fifth Amendment rights. *Id*. (citing *Miranda v Arizona*, 384 US 436, 467; 86 S Ct 1602; 16 L Ed 2d 694 (1966)). "[W]hen an officer interrogates a person who is in custody, that person must be informed in clear and unequivocal terms that he has the right to remain silent and that anything that he says can be used against him in court." *Id*. (quotation marks and citation omitted). Further, "the right to have counsel present during the interrogation is indispensable to the protection of the Fifth-Amendment right" and, "if [the accused] cannot afford a lawyer, one

will be appointed for him." *Id*. at 415-416 (citation omitted). Thus, if the defendant has requested counsel in his dealing with the police, he is not subject to further interrogation (1) until counsel has been made available to him, or (2) unless and until he reinitiates a discussion with police and waives the right to counsel. *Id*. at 416, 419. Any evidence obtained during an interrogation may not be used against the accused "[u]nless the person in custody has been given the required warnings and still waives his rights." *Id*. at 416 (quotation marks and citation omitted). See also *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981) (explaining that once a defendant has asserted his or her right to counsel, no further interrogation may occur "unless the accused himself initiates further communication, exchanges, or conversations with the police").

In this case, defendant signed multiple forms that indicated that he understood his constitutional right to counsel. The circuit court found that the officers used their inability to locate an attorney for defendant as a scare tactic that coerced defendant into providing his confession. The prosecutor argues that the circuit court erred because defendant's confession was voluntary.

All "words or actions on the part of the police" are relevant in determining whether coercive police practices have caused an accused to "elicit an incriminating response." *People v White*, 294 Mich App 622, 629; 823 NW2d 118 (2011). "[W]hen a suspect has been afforded *Miranda* warnings and affirmatively waives his *Miranda* rights, subsequent incriminating statements may be used against him" if the waiver was "voluntarily, knowingly, and intelligently" made. *People v Tanner*, 496 Mich 199, 209; 853 NW2d 653 (2014) (citations omitted).

A voluntary decision is one that is born from "free and deliberate choice, rather than intimidation, coercion or deception." *Id*. (citation omitted). "The test of voluntariness should be whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012) (citation omitted).

> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id*. 396-397 (citation omitted).]

In this case, defendant was 24 years old at the time of the interrogation, and he had completed three years of high-school education. Defendant was in the interrogation room for over five hours, and he spoke to the officers for approximately two of those hours. When defendant was not speaking to the officers, he received snacks and bathroom breaks. Defendant was fully informed of his constitutional rights on three separate occasions, and he affirmed that he

understood his rights each time. The record does not indicate that there was any unnecessary delay in this process, and, further, there were no signs that defendant was intoxicated, drugged, or otherwise incapacitated during later attempts to interrogate him. Additionally, defendant made multiple unequivocal requests to speak to the officers without an attorney present, and he confirmed his reinitiation of the interrogation after being advised of his rights again.

With respect to this reinitiation, the record shows that defendant knew that he was under no obligation to speak with the officers when they returned. Importantly, when the investigating officers returned to take defendant back to the detention center, they did not initiate any questioning of defendant. Had defendant remained silent, the officers would have taken him back to the center, as they explained. At no point before defendant stated that he wanted to speak with them again without an attorney did an officer ask him questions about the offense.

When defendant stated that he wanted to speak to them without an attorney, the officers confirmed that he wanted to speak, and then another officer, unrelated to the investigation, came in to remind defendant of his rights. Defendant repeatedly stated throughout these encounters that he wanted to speak to the officers. Explaining to defendant that they could not speak with him because he had requested an attorney, and then later confirming with defendant that he wanted to speak to them, *in response* to defendant's assertion that he wanted to speak, does not show that the officers reinitiated the conversation. See *id*. at 479, 482. See also *People v Adams*, 245 Mich App 226, 236-239; 627 Mich App 623 (2001) (approving of an inquiry by police to clarify whether defendant is reinitiating a discussion with them without the presence of a lawyer). The officers were *ending* the contact—not *reinitiating* it—by returning defendant to the detention center. Thus, the record confirms that defendant was able to make a voluntary, informed decision to reinitiate the conversation. See *People v Kowalski*, 230 Mich App 464, 483-484; 584 NW2d 613 (1998) (holding that the "defendant, by unequivocally indicating that he no longer wanted an attorney and he wished to give a statement, initiated the conversation that ultimately led to his confession").

As to the motives and tactics of the officers, contrary to the what the dissent reads into the record, there is no reliable evidence to suggest that the investigators intentionally delayed or refused to find defendant an attorney. Rather, the record shows that they tried to find defendant an attorney who might have been available to represent defendant during the interview; that their efforts were not successful should not be grounds for blame or suppression of defendant's statement. Likewise, defendant was not physically or psychologically abused or threatened in any way, at any point—in fact, as noted earlier, defendant had ready access to food, drink, bathroom facilities, and room to walk around during the relatively short period of time when the officers were trying to find him an attorney. During this waiting period, the video shows that defendant certainly appeared to be bored, and he even lamented on occasion about being in this predicament, though this hardly can be considered as evidence of psychological abuse. There is, in short, no reliable evidence from which to conclude that the officers engaged in some kind of ruse about finding an attorney in the hope that having defendant placed alone in a room for a couple of hours would somehow psychologically break him into giving a confession.

"[T]he rule announced in *Edwards* is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Clark*, 330 Mich App at 418 (cleaned up). Considering the totality of the circumstances, we conclude that the officers did not

badger or coerce defendant into continuing the interrogation, and defendant voluntarily waived his right to counsel. Thus, the circuit court erred when it suppressed defendant's confession.

On a separate note, defendant argues on appeal that the district court's pretrial release order was in error. This Court granted leave for the prosecutor to appeal the issues raised in its application for leave to appeal, and MCR 6.126 states that, in relevant part, "[i]f the application for leave to appeal is filed by the prosecutor and the defendant is incarcerated, the defendant may request that the court reconsider whether pretrial release is appropriate." See also MCR 6.106(H)(1).

With that said, defendant has not provided this Court with any argument that the district court abused its discretion. Generally speaking, "a criminal defendant in Michigan is entitled as a matter of constitutional right to have reasonable bail established for pretrial release." *People v Davis*, 337 Mich App 67, 74; 972 NW2d 304 (2021). When a defendant is charged with murder, however, the district court has the discretion to either set bond or deny bond when "the proof of defendant's guilt is evident or the presumption of the defendant's guilt is great." *Id.* at 77. Defendant was charged with first-degree murder, and the proof of defendant's guilt is evident, given his admissible confession. Thus, the district court did not err in providing no bond.

Reversed and remanded for proceedings consistent with this opinion.

/s/ Brock A. Swartzle
/s/ Deborah A. Servitto