*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARKUS JUSTIN HARRIS,

Defendant-Appellant.

UNPUBLISHED
May 23, 2024

No. 361367
Van Buren Circuit Court
LC No. 2021-022957-FC

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of assault with intent to murder, MCL 750.83; felonious assault, MCL 750.82; and reckless driving causing serious impairment of a body function to another person, MCL 257.626(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 60 years for the assault with intent to murder conviction, 25 to 60 years for the felonious assault conviction, and 10 to 60 years for the reckless driving conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2021, Breanne Lemmer was struck in a hit-and-run incident by a vehicle on the grounds of the Great Lakes Inn in South Haven. Arvind Patel, the hotel manager, told South Haven police that a male tenant had checked out of Room 318[1] shortly before Lemmer was hit, and that he believed it was the same person involved in the hit-and-run. Surveillance video from the hotel security cameras showed a male person exiting the hotel and entering a Jeep parked outside the hotel office, then driving back into the hotel complex before rapidly accelerating and leaving the paved area to strike Lemmer, who was walking her dogs in a "grassy area" next to the parking lot. Patel provided police with a copy of the driver's license of the man who had checked out of Room 318. The license belonged to defendant. When South Haven Police Officer Kevin Wildey inspected Room 318, he surmised that only one person had stayed in the room, because only one

---

[1] Lemmer was staying in Room 319.

side of the covers on the room's bed had been turned back. DNA samples from a pillowcase taken from Room 319 matched defendant as one of three contributors.

Defendant was arrested in March 2021. He told police that he did not remember staying at the Great Lakes Inn in January, and stated that his identification and his mother's Jeep had been stolen before the date of the hit-and-run. Defendant's mother, Vera Harris, told police that defendant was living with her in January 2021 and sometimes drove her Jeep, although she also stated that two of her friends would sometimes drive the vehicle as well. Officer Wildey spoke with Harris on the phone on the day of the hit-and-run, and she told him that defendant "had the Jeep." A recording of that phone conversation was admitted and played for the jury. Harris told Officer Wildey that she had reported the Jeep stolen sometime in January 2021.

Officer Wildey, in the course of his investigation, discovered that the Jeep had been stolen in 2020 and had been located in Battle Creek and returned to her in December of that year. When the Jeep was recovered, the front passenger window was broken and covered in plastic. The surveillance video from the motel showed that the vehicle involved in the hit-and-run had plastic covering its front passenger window.

At trial, after the prosecution presented its evidence, defendant moved for a direct verdict of acquittal on the two assault charges, arguing that the prosecution had presented insufficient evidence of defendant's intent to kill or injure Lemmer. The trial court denied defendant's motion. Defendant was convicted and sentenced as described.

In January 2023, defendant moved for a new trial on the basis of ineffective assistance of counsel, requesting either a new trial or a *Ginther*[2] hearing on his trial counsel's alleged ineffectiveness. The trial court held a hearing on defendant's request for a *Ginther* hearing, and concluded that defendant had not shown that an evidentiary hearing was necessary to resolve his claims of ineffective assistance of counsel. The trial court subsequently held a hearing on defendant's request for a new trial, and concluded that defendant had not demonstrated that he prejudiced by his trial counsel's allegedly deficient performance. It therefore denied defendant's motion. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court erred as a matter of law by denying his request for a *Ginther* hearing. Additionally, defendant argues that defense counsel was ineffective because he failed to: (1) investigate and present experts regarding the DNA evidence; (2) investigate alibi witnesses; (3) present witnesses who would testify that the Jeep was also driven by other people; (4) investigate and present evidence that the victim's ex-boyfriend, not defendant, had a motive to injure or kill the victim; and (5) effectively cross-examine the prosecution witnesses. We disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-2-

A trial court's finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008).

"Whether to grant a new trial is in the trial court's discretion, and its decision will not be reversed absent an abuse of that discretion." *People v Brown*, 279 Mich App 116, 144; 755 NW2d 664 (2008).

## A. *GINTHER* HEARING

Defendant argues that the trial court erred as a matter of law by failing to hold a *Ginther* hearing. We disagree.

Defendant contends that the trial court was required to grant an evidentiary hearing upon his timely filed motion for a new trial (and accompanying request for such a hearing), because MCR 6.341 "has absolutely no provisions requiring any sort of affidavit or offer of proof submission to justify an evidentiary hearing." However, MCR 6.431, which governs motions for a new trial, also does not explicitly require a trial court to hold a *Ginther* hearing upon request by a defendant. In this case, the trial court found that defendant had not shown that further development of the record was necessary to determine whether defense counsel was ineffective. Accordingly, the trial court denied defendant's request for a *Ginther* hearing. Defendant has not demonstrated that the trial court erred in the exercise of its discretion by declining to hold a *Ginther* hearing prior to deciding defendant's motion for a new trial. *Brown*, 279 Mich App at 144; see also *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (noting that "[a] trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion.") (citation omitted).

## B. OTHER INEFFECTIVE ASSISTANCE

Defendant also argues that his trial counsel's performance was deficient in several ways. We disagree.

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id*.]

Stated more simply, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "The court must then determine whether, in light of all the circumstances,

the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

Because there are countless ways to provide effective assistance in a given case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012). A reviewing court will defer to counsel's strategic judgments, but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation. See *Strickland*, 466 US at 690-691. An unsuccessful trial strategy does not inherently render it unreasonable and rebut the presumption of effective assistance. See *Trakhtenberg*, 493 Mich at 53 n 8; *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

## 1. DNA EVIDENCE AND EXPERT TESTIMONY

Defendant argues that his counsel was ineffective for failing to call an expert witness to contest the DNA evidence found at the hotel. We disagree. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citations omitted).

In this case, Kathy Fox, a forensic scientist with the Michigan State Police Crime Laboratory, testified that "there was DNA from at least 3 different individuals on [the] pillow case" from the hotel room that defendant checked out of on the day of the incident. Fox explained that "it was approximately 140 septillion times more likely if [the DNA] originated from [defendant] and two unrelated, unknown contributors than if it originated from 3 unknown contributors." Therefore, there was "very strong support that [defendant was] a contributor to the pillow case swabs."

The central issue in this case was whether defendant was driving the Jeep. The DNA evidence—and expert testimony regarding the DNA evidence—was related to whether defendant had been in the hotel room, not whether he was driving the Jeep. It is clear from the record that defense counsel's strategy was to argue that none of the evidence presented placed defendant behind the wheel of the Jeep, not that defendant had not been at the hotel. We will not second-guess that strategy with the benefit of hindsight. *Id*. On cross-examination, defense counsel asked the prosecution's expert witness whether: (1) the DNA results indicated when the DNA was deposited on the pillowcase, and (2) defendant's DNA was matched to any particular vehicle. The expert witness responded no to both questions. Defense counsel reasonably could have determined that further contesting the DNA results would not have aided his trial strategy.

Even assuming that defense counsel provided deficient performance by not consulting a DNA expert, defendant has failed to show prejudice. The record in this case contains sufficient evidence for a jury to reasonably determine that defendant was the driver of the Jeep regardless of whether defendant's DNA was present in the hotel room. Notably, defendant's driver's license was used to book the hotel room, and the hotel room appeared to have been occupied by only one person. Patel testified that because the incident happened so long ago, he could not identify defendant. However, Patel testified that a man checked out of defendant's hotel room less than two minutes before the incident occurred, and Patel believed that the man involved in the incident was the same man who had just checked out. Officer Wildey testified that the surveillance video "show[ed] a male subject checking out of the hotel and then entering the jeep right outside the office and then driving back into the hotel complex all the way . . . to the east in the parking lot" before running over the victim. Moreover, the Jeep that ran over the victim belonged to defendant's mother, who testified that defendant sometimes drove the Jeep, and she had told Officer Wildey that defendant had the Jeep at the time of the incident.

Defendant has not demonstrated that his counsel's performance on this issue was below an objective standard of reasonableness, and has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 US at 690-691.

## 2. ALIBI WITNESSES

Defendant also argues that defense counsel was ineffective for failing to call alibi witnesses or introduce alibi evidence. We disagree.

"[T]he mere fact that a defendant labels a witness as an alibi witness does not make it so." *People v Gillman*, 66 Mich App 419, 424; 239 NW2d 396 (1976). "Alibi testimony is testimony which is offered in order to prove that the defendant was somewhere else than at the scene of the crime *when the crime occurred*." *Id*. (emphasis added).

Defendant argues that a police report (indicating that at 2:30 p.m. on January 20, 2021, defendant stole a car in Holland, Michigan) was evidence that defendant could not have been at the location of the hit-and-run incident. But this report in no way indicates that defendant could not have been at the hotel at the time the incident occurred, as the incident occurred more than four hours earlier at 10:10 a.m. on January 20, 2021. If anything, the police report is indicative of defendant's guilt; the jury could have easily inferred that defendant wanted to distance himself from the vehicle that had struck Lemmer, and that he had stolen another vehicle to facilitate that plan. See *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) ("[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt.").

Defendant also claims that his trial counsel was ineffective for failing to call a witness who would testify that he saw defendant in Holland that day. Defendant does not assert that this witness would provide an actual alibi for defendant at the time the hit-and run occurred. *Gillman*, 66 Mich App at 424. Accordingly, defendant has not established the factual predicate for this claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant has not demonstrated that his counsel's performance on this issue was below an objective standard of reasonableness, and has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 US at 690-691.

### 3. VERA HARRIS'S EXAMINATION

Defendant also argues that defense counsel did nothing during the examination of his mother to clarify that others drove her Jeep and that it had been stolen just before January 20, 2021. We disagree. Harris testified on direct-examination and on cross-examination that her friends also drove the Jeep. Therefore, evidence *was* introduced pertaining to exactly what defendant is arguing should have been introduced—that other people also drove the Jeep.

Harris also testified that she reported the Jeep stolen sometime in January 2021. At first, Harris was unable to provide the exact date that she had reported the Jeep stolen; however, she eventually stated that she reported the Jeep stolen after January 20, 2021. Defendant argues that defense counsel should have elicited from Harris testimony that the Jeep had been stolen on January 18, 2021. In support of this argument, defendant refers to a stolen vehicle police report filed by Harris on January 29, 2021. However, the narrative of the police report states merely that Harris informed police (on January 29, 2021) that *defendant* had told her that he drove the vehicle to Grand Rapids and it was last seen sometime on the 18th or 19th. Defense counsel could have reasonably believed that introducing this self-serving statement could have hurt defendant's credibility with the jury, or in any event that it would not have aided defendant's case; after all, defendant's statements to police that the Jeep and his identification had been stolen were admitted into evidence for the jury's consideration. For that same reason, defendant cannot demonstrate prejudice. *Strickland*, 466 US at 690-691.

### 4. KENNY BAKER

Defendant next argues that defense counsel should have investigated and presented evidence that Lemmer's ex-boyfriend, Kenny Baker, had a motive to injure or kill the victim. We disagree.

In support of this argument, defendant refers to threatening text messages from Baker to Lemmer sent on January 25, 2021. The text messages do not prove that Baker threatened the victim before the hit-and-run, and they make no reference to that incident. The text messages are not kind; however, they do not demonstrate or even suggest that Baker was the person who ran over Lemmer. And even assuming that defense counsel provided deficient performance by not investigating and presenting evidence that Baker may have had a motive to injure or kill Lemmer, defendant has failed to show prejudice in light of the substantial evidence presented that defendant was the person driving the Jeep. *Id.*

### 5. PATEL'S CROSS-EXAMINATION

Defendant argues that defense counsel failed to effectively cross-examine Patel. We disagree.

Defendant argues that his trial counsel "did not question Mr. Patel effectively to demonstrate that Mr. Patel had no idea who had checked into the room, not even the race of the person." This argument is contradicted by the record. Patel testified that he had trouble remembering everything that happened because it had happened so long ago. But Patel explained that he gave the police officers a copy of the driver's license associated with the person who had just checked out on the hotel, as well as the surveillance video. Defense counsel then questioned Patel as follows:

> [*Defense Counsel*]: You never talked to the person in the vehicle that made the speeding noise.

> [*Patel*]: After they go (inaudible). He come in the office and I have to talk to him.

> [*Defense Counsel*]: But you don't know if he came in the office, do you?

> [*Patel*]: I know he came in the office.

> [*Defense Counsel*]: You what?

> [*Patel*]: You see the video, he came (inaudible) in the office and that means (inaudible).

> [*Defense Counsel*]: No, let me ask you this Mr. Patel. I'm not asking you to describe the video or what your procedure was. But you do not recall having a conversation with the person sitting here at the time (inaudible).

> [*Patel*]: (inaudible) I don't remember, I don't remember the face (inaudible).

> [*Defense Counsel*]: Okay, thank you. In fact didn't you—well you testified before in this. Right?

> [*Patel*]: Yeah.

> [*Defense Counsel*]: In South Haven?

> [*Patel*]: Yeah, whatever I tell you, South Haven (inaudible).

> [*Defense Counsel*]: Alright. Do you recall telling the person that was questioning you that you don't even know if the man was African American? Do you remember that?[3]

---

[3] At the preliminary examination, Patel testified that after he reviewed the security footage, he believed that the person driving the Jeep was the same person who had just checked out of the

-7-

[*Patel*]:  I don't know.

[*Defense Counsel*]:  Does it sound like something you would say?

[*Patel*]:  Yup.

Therefore, defense counsel very clearly cross-examined Patel about his testimony at the preliminary examination hearing and elicited testimony that Patel had testified that he did not remember the face or know the race of the person who had checked out of Room 318.  Defendant has not established the factual predicate for this claim.  *Carbin*, 463 Mich at 600.

## 6.  CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of his defense counsel's errors requires reversal.  We disagree.

"The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal."  *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).  However, because we have concluded that defense counsel exercised reasonable trial strategy, and that no errors occurred, this argument lacks merit.

## III.  INSUFFICIENT EVIDENCE

Defendant also argues that there was insufficient evidence to prove beyond a reasonable doubt defendant's identity and intent to kill the victim.  We disagree.

We review de novo a sufficiency-of-the-evidence claim.  *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016).  We examine the evidence in the light most favorable to the prosecution to determine whether it has presented sufficient evidence that could allow a rational trier of fact to find defendant guilty beyond a reasonable doubt.  See *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013).  See also *Jackson v Virginia*, 443 US 307, 324; 99 S Ct 2781; 61 L Ed 2d 560 (1979).  "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime."  *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks, citation, and alteration omitted).

Regarding the issue of identity, defendant's driver's license was used to book the hotel room, his DNA was found in that room, and the hotel room appeared to have been occupied by only one person.  Patel testified that a man had checked out of defendant's hotel room immediately before the incident occurred.  Officer Wildey testified that the surveillance video "show[ed] a male subject checking out of the hotel and then entering the jeep right outside the office and then driving back into the hotel complex all the way . . . to the east in the parking lot" before running over

---

hotel—Patel immediately provided police with the room number, and the associated driver's license, of the man who had just checked out of the hotel.  Patel stated that he could not identify defendant by his name, race, or face because "people wearing masks and maybe sometime a lot of people coming into my motel, then I don't remember all the face."

Lemmer. Moreover, the Jeep involved in the hit-and-run belonged to defendant's mother, who told police that defendant sometimes drove it and who also told Officer Wildey that defendant had the Jeep at the time of the incident. This evidence was more than sufficient for reasonable jurors to conclude that defendant was the person driving the Jeep at the time of the incident. *Smith-Anthony*, 494 Mich at 676.

Regarding the issue of intent to kill, a conviction of assault with intent to commit murder "requires a specific intent to kill. Behavior that might otherwise establish malice in the context of murder, such as callous disregard for human life, is insufficient." *People v Marshall*, 493 Mich 1020, 1020 (2013) (citation omitted). In reviewing a challenge to the sufficiency of the evidence of intent, "[b]ecause of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021).

In this case, the surveillance videos, and Officer Wildey's testimony regarding them, display a specific intent to kill. The videos show that the Jeep was driving slowly at first and then accelerated and veered toward Lemmer, leaving the paved area and completely running her over. A video "is something that [an appellate court] can review as easily as the trial court . . . ." *People v White*, 294 Mich App 622, 633; 823 NW2d 118 (2011). Although a vehicle is not inherently a dangerous weapon, when used against another in furtherance of an assault, it is capable of inflicting serious injury or death. Viewed in the light most favorable to the prosecution, this evidence was sufficient to show that defendant had the requisite intent to kill. *Smith*, 336 Mich App at 308.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra