*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellee,

v

No. 362734
Berrien Circuit Court
LC No. 2020-002365-FH

JAMES ZELL GRIFFIN, JR.,

Defendant-Appellant.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, James Zell Griffin, Jr., challenges his convictions arising from a warrant-based search of his mother's house on July 22, 2020, that resulted in the seizure of two firearms as well as ammunition. After a two-day jury trial in January 2022, defendant was convicted of two counts of possession of a firearm by a felon (felon-in-possession), MCL 750.224f; one count of possession of ammunition by a felon, MCL 750.224f(7); and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve 30 months' to 10 years' imprisonment for each felon-in-possession conviction and the conviction for possession of ammunition, and two years' imprisonment for each felony-firearm conviction, to be served consecutively to defendant's sentences for the other offenses.

On appeal, defendant asserts that he was denied the effective assistance of counsel because his defense counsel failed to move for suppression of statements defendant made to the police after receiving a warning that was defective under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Defendant further contends that his trial attorney was deficient for failing to object to the admission of testimony concerning statements made by a confidential informant and for failing to timely move for disclosure of the identity of the confidential informant. Additionally, defendant claims that the prosecutor committed misconduct during closing argument by making a statement that was not supported by the evidence, and defendant faults his trial attorney for failing to object to the prosecutor's statement. Finally, defendant insists that the cumulative effect of all those errors deprived him of a fair trial. We affirm.

-1-

## I. FACTUAL BACKGROUND

All the charges in this case stemmed from a warrant-based search of defendant's mother's house that turned up guns and some ammunition. Members of the Southwest Enforcement Team (SWET) executed a search warrant at the house after a confidential informant said that defendant possessed illegal guns in the home. During the raid, defendant was taken from the house, searched, and placed in a police car. Lieutenant Shawn Yech read defendant his *Miranda* rights, and then defendant told Lieutenant Yech that there was a .45 caliber Smith & Wesson semiautomatic pistol in a safe in his bedroom. The safe had a combination lock, but defendant provided the combination to Lieutenant Yech. Defendant stated his girlfriend bought and registered the gun, but she let him use it on occasion. The safe also contained a regular magazine, an extended magazine, and a box of .45 caliber ammunition containing 21 bullets. As the search continued, officers found a second gun—a loaded .25 caliber Raven Arms pistol—in a shoe that was in the same closet as the safe.

At a jury trial, defendant was convicted of the six offenses listed in this opinion. One felon-in-possession charge involved the .45 caliber Smith & Wesson semiautomatic pistol, and the other felon-in-possession charge involved the .25 caliber Raven Arms pistol. Following his sentencing hearing, defendant moved for a new trial and a *Ginther*[1] hearing, making the same arguments he presents on appeal. The trial court conducted an evidentiary hearing on May 31, 2023, and took testimony from defendant and his trial counsel. The trial court thereafter issued a 17-page opinion on September 29, 2023, denying defendant's motion for a new trial. This appeal of right followed.

## II. LEGAL ANALYSIS

On appeal, defendant presents several claims of ineffective assistance of counsel as well as a single claim of prosecutorial misconduct. We will first address defendant's arguments about the effectiveness of defense counsel, and then we will turn to the prosecutorial-misconduct claim.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). In order to obtain a new trial based upon ineffective assistance of counsel, the defendant must establish that (1) defense "counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The defendant "must overcome a strong presumption that the assistance of his counsel was sound trial strategy[.]" *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). This Court cannot "substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). With these deferential standards in mind, we shall consider defendant's claims of ineffective assistance of counsel.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## 1. DEFECTIVE *MIRANDA* WARNING

Defendant first argues that his trial attorney was ineffective for failing to move to suppress statements defendant made to the police after defendant received a purportedly defective *Miranda* warning. Following the *Ginther* hearing, the trial court determined that the *Miranda* warning given to defendant was defective because he was not told that he had the right to have an attorney present during questioning, a point the prosecutor conceded. But the trial court concluded that no *Miranda* warnings were necessary because: (1) defendant was not in custody when he was questioned; and (2) defendant was not subjected to interrogation. We disagree with both of those findings, but we nonetheless find no reversible error because defendant has not shown that the admission of his statements at trial was outcome-determinative.

"Every person has a constitutional right against self-incrimination." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018). "To effectuate this right, the police must warn a defendant of his or her constitutional rights if the defendant is taken into custody for interrogation." *Id*. "The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after review de novo of the record." *Id*. (quotation marks and citation omitted). We review "for clear error the trial court's factual findings concerning the circumstances surrounding statements to the police." *Id*. Statements of a defendant made "to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *Id*. at 561-562. A *Miranda* warning must explain that the suspect has the right to the presence of an attorney prior to questioning. *People v Mathews*, 324 Mich App 416, 425; 922 NW2d 371 (2018). A warning "preceding a custodial interrogation is deficient when the warning contains only a broad reference to the 'right to an attorney' that does not, when the warning is read in its entirety, reasonably convey the suspect's right to consult with an attorney and to have an attorney present during the interrogation." *Id*. at 438.

*Miranda* warnings are necessary if an individual "is taken into custody for interrogation." *Barritt*, 325 Mich App at 561. " '[C]ustody is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Id*. at 562. "In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id*. (quotation marks and citations omitted). "[I]n order to determine how a suspect would have 'gauge[d]' his or her freedom of movement, courts must examine all of the circumstances surrounding the interrogation . . . ." *Id*. (quotation marks and citation omitted). Relevant circumstances include "(1) the location of the questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning[.]" *Id*. at 562-563 (citations omitted). No "one circumstance is controlling; rather, a reviewing Court must consider the totality of the circumstances when deciding whether an individual was subjected to custodial interrogation under *Miranda*." *Id*. at 563.

Here, execution of the search warrant by the police officers—including officers wearing tactical gear—occurred at defendant's mother's house as defendant and the other occupants were sleeping. Officers broke down the door and removed defendant from the house. He was initially handcuffed behind his back, but the handcuffs were later moved to the front. He was placed in the

back of a police car and told that he was not under arrest, but also that he could not leave. When he was being questioned by Lieutenant Yech, the back door of the car was open and defendant was facing sideways out of the vehicle. But when defendant was not actively being questioned, the door was closed and he was locked in the car. The portion of the interaction between defendant and the police that was caught on the officer's body-worn camera lasted approximately 15 minutes. During that time, defendant made statements acknowledging that there were two guns in the room in which he was sleeping, and he was arrested immediately after the questioning. Considering the circumstances when defendant made his statements, including the fact that defendant was told he was not free to leave, a reasonable person in his position would not have felt free to terminate the interview and leave. See *id*. at 562. Thus, this initial step of the analysis suggests that defendant was in custody when he made statements to the police. See *id*.

Furthermore, a review of the relevant factors bolsters the conclusion that defendant was in custody. *Id*. at 562-563. The first factor—the location of the questioning—weighs in favor of a finding that defendant was in custody. See *id*. at 562. At that time, defendant was in the driveway of his mother's house, but he was handcuffed and in the back of a police car. When the door to the car was open, there was an officer standing directly in front of defendant, physically blocking any path of escape for defendant. This Court has previously found it important that the alleged custodial interrogation occurs in public, where it can be witnessed by passersby. *People v Steele*, 292 Mich App 308, 317-318; 806 NW2d 753 (2011). But an encounter that takes place while the defendant is in the back of a police car—and so in public—can still be considered a custodial interrogation. See *People v Bloyd*, 416 Mich 538, 547; 331 NW2d 447 (1982) (holding that the defendant was in custody when he was in a police car away from the scene of the initial stop); *People v Raper*, 222 Mich App 475, 479; 563 NW2d 709 (1997) ("Because defendant was handcuffed in the backseat of a moving police car when he made his inculpatory statement, there is little question that he was in custody when it was made.").

Even though the encounter took place in a public setting, it occurred in a police-dominated atmosphere, with many officers on the scene and at least one officer standing in front of defendant whenever the police car door was open. Moreover, defendant was restrained and put in the police car, reinforcing the notion that the police officers were in control of defendant's movements and distinguishing this case from previous cases where this Court decided that an individual sitting in the back of a police car was not in custody. See *People v Jones*, 301 Mich App 566, 580; 837 NW2d 7 (2013) (holding that defendant was not in custody despite being in the back of a police car because the police officer asked defendant to get in the car for defendant's own safety).

The second factor, i.e., the duration of the questioning, militates in favor of a finding that defendant was not in custody. See *Barritt*, 325 Mich App at 562. The video of the questioning is approximately 15 minutes long. This Court has previously held that a 90-minute interrogation did not weigh in favor of, or against, a finding that the defendant was in custody. *Id*. at 569. Given that holding, the significantly shorter duration of the questioning here weighs against a finding that defendant was in custody.

The third factor focuses on statements made by police to the suspect. *Id*. at 563, 570-571. Defendant was told he was not under arrest, but was also told that he was not free to leave. During the encounter, Lieutenant Yech put pressure on defendant to tell him about any other guns, and let defendant know that that moment was defendant's one opportunity to tell the lieutenant about other

guns. He increased that pressure after police officers found the second gun in defendant's room, and potential criminal charges that defendant could face were also discussed. Despite the fact that Lieutenant Yech informed defendant that he was not under arrest, the third factor weighs in favor of a finding that defendant was in custody.

In considering the fourth factor, i.e., "the presence or absence of physical restraints during the questioning," *id*. at 563, defendant was handcuffed throughout the police questioning, so that factor weighs in favor of a finding that defendant was in custody. See *id*. Likewise, the fifth factor focuses on "the release of the interviewee at the end of the questioning," *id*., and defendant was not released at the end of the questioning, so that factor supports a finding that defendant was in custody. See *id*. Assessing the totality of the circumstances, with nearly every factor weighing in favor of a finding that defendant was in custody, we conclude the trial court erred in determining that defendant was not in custody for purposes of *Miranda*. See *id*. at 583-584.

The trial court bolstered its ruling that *Miranda* warnings were unnecessary by finding that the exchange between defendant and Lieutenant Yech was "not an interrogation as contemplated by the *Miranda* decision." The trial court reasoned that defendant voluntarily offered information without prompting by the police. "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *People v Elliott*, 494 Mich 292, 305; 833 NW2d 284 (2013). The "functional equivalent" of questioning constitutes interrogation. *People v White*, 294 Mich App 622, 628-629; 823 NW2d 118 (2011). "Interrogation" includes "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 629.

After defendant was handcuffed, given a defective *Miranda* warning, and kept in the back of a police vehicle, Lieutenant Yech asked defendant if he had any questions. Then, in response to defendant's question about what was happening, Lieutenant Yech explained that the police had a search warrant and were searching for guns. At that point, the following exchange took place:

> *Lieutenant Yech*. So, I guess my question is . . .
>
> *Defendant*. Can I be honest and just take you straight to 'em?
>
> *Lieutenant Yech*. No.
>
> *Unidentified Police Officer*. You can tell us.
>
> *Lieutenant Yech*. You can tell us where they're at.
>
> *Unidentified Police Officer*. It would be easier.
>
> *Defendant*. Easier?
>
> *Lieutenant Yech*. Your mom ain't got nothing to do with it?
>
> *Defendant*. No.

In sum, as Lieutenant Yech began to question defendant, defendant interrupted him and offered to show the officers where to find the gun or guns. In response, the police advised defendant that it would be easier for him to just tell them where any guns were located. At the very least, this was the functional equivalent to direct questioning because the police officers should have known that it was reasonably likely to elicit an incriminating response from defendant. See *White*, 294 Mich App at 629. Also, as the trial court conceded, defendant's later statements—including those about the existence and ownership of the .25 caliber gun—were the product of police questioning. Thus, because defendant was not properly advised of his *Miranda* rights when he was taken into custody for interrogation, his statements to Lieutenant Yech should have been inadmissible. See *Barritt*, 325 Mich App at 562. Because the statements were inadmissible, defense counsel was ineffective for failing to move to suppress those statements before trial. See *Sabin*, 242 Mich App at 659.

But defendant is not entitled to a new trial based upon ineffective assistance of counsel just because he has established that his trial attorney's performance in failing to move for suppression was deficient. To obtain relief in the form of a new trial, defendant must also establish that, "but for counsel's deficient performance, there is a reasonable probability that the outcome [of the trial] would have been different." *Trakhtenberg*, 493 Mich at 51. Based upon our review of the record, we conclude that defendant cannot make that essential showing.

At defendant's trial, a detective testified that guns and ammunition were discovered in the room where defendant was sleeping when the search warrant was executed. Defendant's girlfriend and his mother testified that, when defendant stayed at his mother's house, he slept in the bedroom where the guns were ultimately found. Defendant's mother testified that she did not own any guns, and she explained that defendant and his girlfriend brought the safe that contained one of the guns to her home along with other belongings. Defendant's girlfriend testified that she purchased the .45 caliber gun in Indiana. She acknowledged that defendant had access to the safe where that gun was stored, that he knew the combination to the safe, and that she presumed he knew that the .45 caliber gun was inside the safe. In fact, defendant also used that safe to store marijuana. Moreover, defendant's girlfriend denied owning the .25 caliber gun and asserted that she had never seen it.

The jury convicted defendant of being a felon in possession of firearms and ammunition as well as felony-firearm. A conviction of felon-in-possession requires proof that the defendant is a felon in possession of a firearm before the right to possess a firearm is formally restored. *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). In this case, defendant never disputed that he was a felon who could not possess a firearm. Rather, he challenged the possession element. Possession can be either actual or constructive. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). "The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *Id*. at 92 (quotation marks and citation omitted). "Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ." *Id*. (quotation marks and citation omitted). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989).

Even if defendant's statements obtained in violation of *Miranda* were excluded at the trial, substantial evidence established that defendant knew the location of the guns and the ammunition

that were reasonably accessible to him, so defendant had constructive possession of both guns and all the ammunition. See *id*. Accordingly, defendant has failed to establish that defense counsel's deficient representation in failing to move to suppress his statements to Lieutenant Yech affected the outcome of the trial. See *Sabin*, 242 Mich App at 659. Therefore, the trial court did not err by denying defendant's motion for a new trial on that basis. See *id*.

## 2. THE CONFIDENTIAL INFORMANT

Next, defendant faults his trial attorney for failing to object to Lieutenant Yech's testimony about what the confidential informant said and to the prosecutor's references to statements that the confidential informant made. Defendant argues that these statements attributed to the confidential informant were all testimonial, and thus hearsay admitted in violation of the Confrontation Clause. Defendant also faults his trial attorney for failing to timely move for disclosure of the confidential informant's identity.

After the *Ginther* hearing, the trial court found that defense counsel was not ineffective for failing to object to the references to the confidential informant's statements. As the trial court put it, that evidence was admissible to explain why the police undertook their investigative steps, and it was not used to prove the truth of the matter asserted, i.e., that defendant possessed guns. The trial court also ruled that defense counsel was not ineffective for failing to timely move to disclose the identity of the confidential informant because defendant did not establish that the informant's testimony would have been relevant or favorable to defendant. We find no error in the trial court's analysis, so we reject defendant's argument that his trial attorney was ineffective in any way in the approach to the confidential informant.

Whether a defendant was denied the right of confrontation is a constitutional question that this Court reviews de novo. *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014). Moreover, this Court reviews "a trial court's decision whether to order production of a confidential informant for an abuse of discretion." *Id*. at 156. " 'An abuse of discretion occurs when the [trial] court chooses an outcome that falls outside the range of reasonable and principled outcomes.' " *Id*. (citation omitted).

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him[.]' " *Id*. at 153, quoting US Const, Am VI (alterations and ellipsis in original). The Michigan Constitution provides the same protections. *Henry*, 305 Mich App at 153, citing Const 1963, art 1, § 20. "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Henry*, 305 Mich App at 153 (quotation marks and citation omitted). A statement is "testimonial" if it has the primary purpose of establishing "past events potentially relevant to later criminal prosecution." *Id*. (quotation marks and citation omitted). "The constitutional concern is out-of-court statements of witnesses, that is, persons who bear testimony against a defendant." *Id*. (quotation marks and citation omitted).

A statement made by a confidential informant to the police often constitutes a testimonial statement. *Id*. But the Confrontation Clause does not preclude the use of out-of-court testimonial

statements when the statements are used for a purpose other than establishing the truth of the matter asserted. *Id*. Admission of an out-of-court statement offered to show the effect of the statement on the listener therefore does not violate the Confrontation Clause. *Id*. "Specifically, a statement offered to show why police officers acted as they did is not hearsay." *Id*. (quotation marks and citation omitted).

Here, the trial court correctly ruled that references to statements made by the confidential informant were admissible because the purpose of that testimony was not to establish the truth of the matter asserted. The first reference occurred in the prosecutor's opening statement. According to that opening statement, law-enforcement officers "received a tip from a confidential informant about the Defendant's home, and they were able to obtain a search warrant to search it specifically for firearms and ammunition, and that's exactly what they found back on this date." Additionally, during Lieutenant Yech's direct testimony, he explained that a confidential informant was used in this case and that the informant reported that there were firearms in the house and in defendant's possession. On cross-examination, defense counsel asked Lieutenant Yech about the affidavit that Lieutenant Yech drafted to accompany the request for a search warrant. Lieutenant Yech testified that he wrote in the affidavit that he had previously worked with this informant for 14 months, and the informant's information resulted in search warrants on at least four occasions. In this specific case, the informant described seeing handguns in the house. The affidavit further stated that the informant was in the house 24 to 48 hours before the affidavit was signed. The prosecutor again referred to the information provided by the confidential informant in closing argument.

The statements attributed to the confidential informant were only used to explain why the police officers searched the house where defendant was staying. See *Henry*, 305 Mich App at 153. Because the statements were admissible for that limited purpose, defendant's trial counsel was not ineffective for failing to contest the admission of the statements. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).[2]

Beyond that, defendant's claim that his defense counsel was ineffective for failing to timely move to identify the informant is meritless. As a general proposition, "the people are not required to disclose the identity of confidential informants." *Henry*, 305 Mich App at 156 (quotation marks and citation omitted). But if a defendant establishes "a possible need for the informant's testimony, a trial court should order the informant produced and conduct an *in camera* hearing to determine if the informant could offer any testimony beneficial to the defense." *Id*. Whether a defendant has "demonstrated a need for the testimony depends on the circumstances of the case" and a trial court

---

[2] Defendant also notes that the prosecutor asked defendant whether the informant was correct that defendant had guns in his house. Defendant appears to take issue with the question posed, instead of the answer to that question. In response to those questions, defendant stated that the informant was incorrect and questioned whether there even was an informant. Defendant has not explained how the prosecutor's questions amounted to a violation of the Confrontation Clause, and therefore defendant has not explained how his defense counsel was ineffective for failing to object to those questions. In fact, those questions afforded defendant the opportunity to testify in support of his attempt to discredit the confidential informant.

may "consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*. (quotation marks and citation omitted).

Here, defendant's counsel moved to identify the confidential informant, but the motion was untimely. Because defense counsel failed to explain the reason for the delay, the trial court denied the motion. At the *Ginther* hearing, defense counsel testified that he filed the late motion because defendant wanted him to file the motion. But he did not believe it was important to the defense or a worthwhile avenue to pursue. Defendant testified at the *Ginther* hearing that he was under the impression he could confront the confidential informant at trial. He stated that he would not have gone to trial if he had known that he could not attack the credibility of the confidential informant.

Defendant has failed to show how the confidential informant's testimony would have been beneficial to the defense. Indeed, defendant has not even indicated what the confidential informant would have said if called to testify. See *id*. Thus, defendant has not established that his case falls outside the general rule that a prosecutor need not disclose the identity of a confidential informant. See *id*. Defendant sought to attack the credibility of the confidential informant, and did so at trial by presenting testimony that no one was in the house 24 to 48 hours before the raid. Defendant's mother testified that she had video surveillance showing that no one was in her house during the applicable period.[3]

In any event, the police obtained a search warrant and searched defendant's mother's home. During that search, two guns were discovered in the bedroom where defendant slept. The charges that defendant faced arose out of the discovery of those firearms. Defendant has failed to establish how any credibility issues with the confidential informant would have been helpful to the defense in light of the results of the search and the charges defendant faced. Defendant has also not shown that the confidential informant would have provided any material or exculpatory evidence. Hence, defense counsel was not deficient for failing to timely pursue the motion to identify the informant. See *Riley*, 468 Mich at 142.

Further, defendant contends that he would not have gone to trial if he had known that he would not be able to confront the confidential informant at trial, and he asserts that defense counsel was ineffective for not providing "candid advice so he could make an informed decision on how to proceed." When a defendant claims he or she would have accepted a plea offer and not gone to trial if not for ineffective assistance of counsel, defendant must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v Cooper*, 566 US 156, 164; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Defendant's brief is devoid of any such facts, so defendant has failed to establish the factual predicate for his claim of ineffective assistance. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant has not shown that he

---

[3] Although defendant sought to attack the credibility of the confidential informant and cast doubt on whether a confidential informant existed, defendant did not challenge the validity of the search warrant that was issued in reliance on the confidential informant's statements.

was denied the effective assistance of counsel on the basis of testimonial statements made by the confidential informant or his trial attorney's failure to timely move to identify the informant, see *Sabin*, 242 Mich App at 659, the trial court correctly denied his motion for a new trial on that basis. See *id*.

## B.  PROSECUTORIAL MISCONDUCT

Defendant accuses the prosecutor of committing misconduct by improperly stating during closing argument that the confidential informant reported that defendant was selling guns from his mother's house.  Defendant claims that there was no evidence presented at trial that defendant was selling guns.  Defense counsel did not object to that statement in the prosecutor's closing argument or request a curative instruction.  Accordingly, to the extent defendant now directly challenges the propriety of the prosecutor's statement, that issue is unpreserved.  *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016).  This Court reviews unpreserved issues for plain error that affected substantial rights.  *Id*. at 202.  Defendant has failed to show that the prosecutor's statement was plain error that affected substantial rights.  Defendant also asserts that his defense counsel was ineffective for failing to object to that portion of the prosecutor's closing argument.

We review "claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial."  *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).  "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions."  *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).  "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction."  *Watson*, 245 Mich App at 586 (quotation marks and citation omitted).  As a general rule, "prosecutors are afforded great latitude regarding their arguments and conduct."  *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks omitted).  "Prosecutors may not make a statement of fact to the jury that is unsupported by the evidence, but they are free to argue the evidence and all reasonable inferences arising from it as they relate to the theory of the case."  *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000) (citation omitted).

In closing argument, the prosecutor asserted that the confidential informant "said they saw Defendant selling guns out of this house[.]"  No testimony at trial established that defendant was selling guns, however, so defendant insists that the prosecutor's assertion was improper.  See *id*.  Because that argument is unpreserved, defendant must establish that the prejudicial effect of that comment could not have been cured by a timely instruction, *Watson*, 245 Mich App at 586, which offsets the prejudicial effect of most inappropriate prosecutorial statements.  *Unger*, 278 Mich App at 235.  The trial court instructed the jurors that "[t]he lawyers' statements and arguments are not evidence," and told them that they "should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge."  Those instructions cured any prejudicial effect of the prosecutor's brief, isolated remark.  See *id*. at 235, 239 (holding that an erroneous statement by the prosecution did not warrant reversal because that inaccurate remark was isolated and brief).

Furthermore, the strength of the evidence against defendant establishes that the prejudicial effect of the prosecutor's statement in closing argument was negligible.  Two guns were discovered

in the room where defendant was sleeping at his mother's house. Defendant's girlfriend testified that the gun in the safe was hers, but she acknowledged that defendant had access to the safe. She denied owning the other gun that was seized, while defendant's mother denied owning any guns. Therefore, defendant has not established that the statement was so prejudicial that a timely curative instruction would not have sufficed. Thus, defendant has not shown that the prosecutor's statement was plain error that affected his substantial rights. See *Solloway*, 316 Mich App at 201-202.

Defendant claims his defense attorney was ineffective for failing to object to the statement when the prosecutor made it. Defendant raised that issue at the *Ginther* hearing and the trial court agreed that the prosecutor made a misstatement in closing argument, but the trial court found that a new trial was not warranted because defense counsel may have chosen not to object in order to avoid calling attention to the prosecutor's statement. Also, the trial court ruled that the statement was not outcome-determinative. We agree with the trial court that defendant did not establish that defense counsel's failure to object to the prosecutor's statement made in closing argument affected the outcome of the trial.

There was conflicting testimony at the *Ginther* hearing concerning the statement. Initially, defense counsel testified that he did not think it was critical to object because he knew the court would give the jurors an instruction that the attorneys' arguments were not evidence. But defense counsel later acknowledged that he did not believe that it was fine for the jury to hear the statement and that he would have objected if he would have caught it. On cross-examination, defense counsel agreed it would have drawn the jury's attention to the statement if he had objected. Nonetheless, even if defense counsel was deficient for failing to object to the statement, that error did not affect the outcome of defendant's trial in light of the evidence presented against him.

## C. CUMULATIVE ERROR

Finally, defendant contends that the cumulative effect of the claimed errors denied him his right to a fair trial. "[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice by any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). "In making this determination, only actual errors are aggregated to determine their cumulative effect." *Bahoda*, 448 Mich at 292 n 64. For reversal on the grounds of cumulative error to be appropriate "the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001) (citation omitted). Here, defendant's claim that cumulative error denied him his right to a fair trial is meritless. Even if this Court concludes that error occurred in the admission of defendant's statements made after he was given a defective *Miranda* warning and that the prosecutor misspoke once in her closing argument, defendant has not shown that the cumulative effect of those two errors was "seriously prejudicial." See *id*. Accordingly, defendant is not entitled to a new trial.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates

-11-