*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LLOYD JARVI,

        Defendant-Appellant.

UNPUBLISHED
March 11, 2026
9:14 AM

No. 369362
Dickinson Circuit Court
LC No. 22-006157-FC

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Following a jury trial, defendant appeals by right his convictions for assault with intent to commit murder (AWIM), MCL 750.83, first-degree home invasion, MCL 750.110a(2), and unlawful driving away an automobile (UDAA), MCL 750.413. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of imprisonment of 25 to 50 years for AWIM and 5 to 15 years for UDAA; however, defendant's sentence of 10 to 40 years' imprisonment for home-invasion was to be served consecutively to defendant's AWIM sentence.

On appeal, defendant challenges the trial court's alleged refusal to immediately decide his pro se motion to dismiss. Defendant also contends that his trial attorney was ineffective for conceding his guilt at trial and for failing to expedite that motion. Further, defendant argues that he is entitled to a new trial because the trial court erroneously denied his motion to suppress the recording of his pretrial interview with the police. We affirm.

## I. FACTS

This case arises out of defendant's assault of the victim, his ex-wife, with whom he had a contentious relationship at times. On Tuesday, July 26, 2022, the victim obtained a court order that required defendant to pay her $100 monthly until he paid what he owed her as part of their divorce settlement. The order was mailed to defendant.

On Tuesday, August 2, 2022, the victim went to bed. She recalled that she woke up to defendant striking her in the head with an object that she thought sounded like an aluminum

-1-

baseball bat.[1] The victim was screaming for her son who lived with her. Although the victim remembered defendant talking, she did not recall what he said. The victim remembered that defendant struck her twice. The victim was severely injured, spending nearly two weeks in the hospital and was still recovering. The victim also discovered that her purse and car were missing after the assault.

After defendant was arrested in Wisconsin, Michigan State Police Detective Jason Sleeter and Sergeant Greg Primeau interviewed him. Defendant later sought to suppress the recording of this interview before trial began; however, the trial court denied his motion, and a redacted version of the recording was admitted into evidence and played for the jury.

During the interview, defendant described his history with the victim. Defendant had taken time off from work to focus on music. Defendant had received a shutoff notice regarding his electricity and the court order directing him to pay $5,000 by Monday or face contempt.[2] Defendant hitchhiked and then walked to the victim's home to ask her for $800 and the keys to her vehicle so that he could leave the area.

After arriving, defendant went into the victim's bedroom, where she was sleeping and made his request. The victim did not engage in conversation and began yelling at him to leave.

Defendant left the victim's bedroom and went into the garage. There, he retrieved a wooden handle that had previously been attached to a sledgehammer or ax.

Defendant returned to the victim's bedroom and used the handle to hit the victim in the head and chest. Defendant admitted that he hit her "too many" times and that he "hurt [the victim] really bad." Defendant told the police that he "hope[d]" the victim was still alive, admitting that he did not know if she was, even though he told the police that she appeared to be breathing when he left her home.

When defendant left the victim's home, he took keys and money from her purse. Shortly after 1 a.m. on August 3rd, defendant stopped at a Kwik Trip in Wisconsin before driving to a friend's home in that state. Along the way, defendant disposed of the object he had used to strike the victim and her blood was later found in the car.

At trial, defense counsel conceded that defendant assaulted the victim in opening statement, but argued that there was no evidence that defendant had intended to murder her:

> * * * I don't often say this in an opening statement in a criminal case, but I agree with the great majority of what [the prosecutor] just told you. As far as the actual events, there isn't a real dispute as to what happened. The dispute is with her conclusions, the conclusions of the prosecutor. Mainly that [defendant] intended

---

[1] The victim did not have such a bat at her home but offered that defendant may have brought one with him.

[2] The court order directed defendant to pay $100 monthly until he satisfied the debt he owed or face contempt. It did not order him to pay the entire debt, which was under $5,000.

to kill her or murder [the victim] that night. So, as it has been hinted at and we talked about this a little bit in voir dire, ultimately you're going to be asked to decide what his intent was when these events occurred. That's really what this case is about. * * * [After defendant arrived at the victim's house asking for money and keys to her car to leave the area,] it became obvious that she was not going to help him. . . . [H]e decided that he would try to knock her out, so he could just take what he wanted, and that's what – that's what his intent was. * * * He went into the garage 'cause he knew that there was various things out there that could maybe knock her out with and he talked about—and you'll hear this in the interview. He was looking at somebody being knocked out as like a, just a temporary thing. He talked about he had been knocked out playing football, you know you get your bell rung and he thought he would knock her out and take what he wanted and then leave. That—that's what his intent was. So, he takes this wood handle out of the garage and you'll hear that there were more dangerous things that he could have taken. There was a tire iron, you know a metal—metal tire iron, there were various pipes, other implements that would've been if his intent was to murder, more useful for that purpose than what he did take. So, he thought he could knock her out. She'd you know be okay, and then he—he could take what he needed and leave, and leave her there, that's what he wanted to do. But I guess you know, the best laid plain [sic], she didn't just go unconscious after she was hit once. He ah—so he kept hitting her, he admitted he did it too much, and then at a point she was subdued, and he stopped. Unfortunately, she was—it can't—it can't be denied, she was seriously injured at that point. But, the evidence will not support the conclusion that his goal was to cause those injuries or to kill her, but rather his intent was to get her subdued so he could take what he needed and get out of there, and then he did take the keys when he left. He indicated he said to the officers that she was talking to him, they were still talking at that point when he left, he knew she was still alive when he left. At that point, if he—if his intent was to kill her, there was nothing stop—stopping him. Not to be blunt, but he would have simply finished the job if that's what he wanted to do.

The following day, defendant filed a pro se motion to dismiss, asking the court to declare a mistrial and to dismiss the case based on ineffective assistance of counsel. Therein, defendant asserted that in his communications with counsel, defendant clearly conveyed that he struck the victim "to prevent her from continuing to yell at him." Neither counsel nor defendant discussed any alternative motive. Even so, during opening argument, defense counsel stated: "Mr. Jarvi talked to the victim who didn't give him what he wanted, so he knocked her out and took what he wanted." Defendant denied making any such statement and counsel did not "for[e]warn defendant that he was going to mislead the jury into believing something he himself had fabricated." Thereafter, defendant refused to participate in the proceedings.

The trial court addressed defendant's motion to dismiss the following day. Because defendant did not waive attorney-client privilege, defense counsel noted that he believed his

-3-

remarks during opening statement mirrored what defendant told the police during his interview.[3] The court denied defendant's motion to dismiss determining that defense counsel's opening statement, which was not evidence, was not much different than what defendant stated. Moreover, defendant admitted striking the victim during his police interview. Thus, counsel's decision was a matter of strategy and defendant had not shown that counsel was ineffective or that defendant was entitled to a mistrial or dismissal of the case.

Thereafter, the jury convicted defendant as charged. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL – OPENING STATEMENT

Defendant first argues that defense counsel's concession during opening statement violated his constitutional right to client autonomy and effective assistance of counsel. We disagree.

Defendant did not raise the issue of client autonomy in his motion to dismiss, or otherwise, before the trial court so this issue unpreserved. See *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012) (providing that "the failure to assert a constitutional right ordinarily constitutes a forfeiture of that right."). Defendant also did not preserve his claim of ineffective assistance of counsel on this ground by filing a motion for a new trial or attendant evidentiary hearing[4] in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion for a remand for a such a hearing in this Court,[5] *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

---

[3] During the police interview, defendant said:

> But you know, I've – I've been in a lot of fights. I've played hockey and whatever and I've been knocked out. I've knocked out guys, you know. And it's like, . . . man, just, you know, just get knocked out, you know. I mean come on man. But, then, she's just, you know, yelling, you know. But it got to a point where she was subdued, you know, so I could stop. But it's a lot of damage man already.

Earlier in the interview, defendant also said: "I was tryin' to knock the air out of her so she'd quit screaming." Defendant further admitted to hitting the victim in the head and chest and repeatedly recognized that he hit her "too many" times. Defendant further recognized that he "hurt [the victim] really bad." In fact, defendant "hope[d]" that she was still alive, but he did not know if she was, even though she appeared to be breathing when he left.

[4] See *People v Ginther*, 390 Mich 436, 445; 212 NW2d 922 (1973).

[5] Although defendant filed a motion for a remand in this Court, alleging, among other things, that defense counsel conceded defendant's guilt without discussing it with him, he did not request a *Ginther* hearing. Instead, he requested that this Court remand the case to the trial court "and specifically grant the Circuit Court the discretion to reverse [defendant's] conviction because it appears that justice has not been done." This Court denied the motion. *People v Jarvi*, unpublished order of the Court of Appeals, entered September 23, 2024 (Docket No. 369362), and no *Ginther* hearing was ever conducted.

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Findings of fact are reviewed for clear error, while questions of law are reviewed de novo. *Id*. However, when, as in this case, a defendant's ineffective assistance of counsel claim is unpreserved, our review is limited to errors apparent on the existing record. See *Abcumby-Blair*, 335 Mich App at 227.

"[T]he Sixth Amendment, in grant[ing] to the accused personally the right to make his defense, speaks of the assistance of counsel, and an assistant, however expert, is still an assistant." *McCoy v Louisiana*, 584 US 414, 421; 138 S Ct 1500; 200 L Ed 2d 821 (2018) (quotation marks and citations omitted; second alteration in original). "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *Id*. at 422 (quotation marks and citation omitted). But some decisions rest solely within the defendant's discretion, including "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." And "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts[;]" it is in this situation that "his lawyer must abide by that objective and may not override it by conceding guilt." *Id*. at 423.

The record in this case does not suggest that defendant expressly informed defense counsel that he did not approve of the strategy of conceding some guilt at trial. Defendant's pro se motion challenged defense counsel's concession of guilt, asserting that it was factually incorrect and that he had informed defense counsel that he struck the victim to prevent her from yelling at him. After filing his motion, defendant refused to participate in the proceedings, to be physically present in the courtroom, to discuss his motion when invited to do so, and to respond when asked if he waived attorney-client confidentiality pertaining to his communications with defense counsel. Defense counsel explained that he attempted to mirror defendant's own statements from the police interview in opening statement and believed that he had accurately done so. Although defendant provided an unsigned, undated, unnotarized alleged affidavit regarding his discussions with defense counsel to his motion for remand,[6] he did not state that he informed defense counsel of his desire to maintain his unqualified innocence at trial. Moreover, defendant refused to respond or otherwise participate when given an opportunity to proclaim his innocence or explain that defense counsel suppressed his desire to maintain his unqualified innocence at trial. The record therefore does not support defendant's contention that defense counsel overrode his autonomy by disregarding a direction to not admit any criminal conduct at trial.

---

[6] While titled an affidavit, defendant's unnotarized statement fails to meet the procedural requirements of MCR 7.211(C)(1), and, as already mentioned, this Court denied defendant's motion for remand.

The record also does not support defendant's contention that defense counsel was ineffective for conceding defendant's guilt during opening statements. Concessions by defense counsel to lesser offenses does not necessarily constitute ineffective assistance of counsel. *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994). This Court has consistently held that, "where the evidence obviously points to [a] defendant's guilt, it can be better tactically to admit guilt and assert a defense or to admit guilt on some charges but maintain innocence on others." *People v Matuszak*, 263 Mich App 42, 60; 687 NW2d 342 (2004). "[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a useless charade." *Florida v Nixon*, 543 US 175, 192; 125 S Ct 551; 160 L Ed 2d 565 (2004) (quotation marks and citation omitted). Accordingly, "only a complete concession of . . . guilt" generally rises to the level of constitutionally deficient performance. *People v Krysztopaniec*, 170 Mich App 588, 596; 429 NW2d 828 (1988).

In this case, defense counsel did not concede defendant's guilt entirely; rather, counsel argued that the prosecution had failed to prove the intent necessary for AWIM. See *People v Taylor*, 422 Mich 554, 567; 375 NW2d 1 (1985) ("[I]n order to find a defendant guilty of [AWIM], it is necessary to find that there was an actual intent to kill.") Defense counsel was faced with a great deal of evidence against defendant for each of the three charges he faced, including defendant's having admitted to hitting the victim in the head and chest with a wooden handle after she refused to give him $800 and the keys to her vehicle. In an effort to persuade the jury to eschew finding defendant guilty of AWIM, defense counsel strategically conceded he was guilty of the lesser included offense of assault with intent to do great bodily harm less than murder. In addition to his statements in opening statement and closing argument, defense counsel furthered this approach throughout trial by questioning the prosecution's witnesses about defendant's access to more dangerous weapons and about the lack of evidence affirmatively indicating that defendant planned to kill the victim.

For these reasons, defendant has failed to establish that defense counsel's concession fell below an objective standard of reasonableness, or otherwise to overcome the presumption that defense counsel employed sound strategy at trial. See *Head*, 323 Mich App at 539. On the contrary, it was reasonable for defense counsel to concede defendant's guilt to a lesser offense while vigorously maintaining that defendant had not acted with the intent required for the greater offense of AWIM. See *Matuszak*, 263 Mich App at 60.

Accordingly, defendant is not entitled to a new trial on the ground that defense counsel violated his constitutional rights to client autonomy, and to effective assistance of counsel, by conceding some criminal responsibility on defendant's part.

## III. MOTION TO DISMISS

Defendant also contends that he is entitled to a new trial because the trial court violated his due process rights when it refused to rule on his emergency motion to dismiss, filed on the second day of trial, until the third day of trial. Initially, we note that defendant did not caption his motion to dismiss as an emergency motion, did not identify where in the record the court "refused" to rule

on his motion,[7] and failed to object that he had been denied due process when the court heard his motion.

Thus, defendant did not preserve these claims below. An unpreserved constitutional claim is reviewed for "plain error that affected substantial rights." *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). To establish plain error requiring reversal, a defendant must show that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 750. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (alteration, quotations marks, and citation omitted).

"The essence of due process is fundamental fairness." *In re Beck*, 287 Mich 400, 401; 788 NW2d 697 (2010) (quotation marks and citation omitted). "The fundamental requirements of procedural due process are notice and a meaningful opportunity to be heard before an impartial decision maker." *Id*. at 401-402

Defendant also failed to provide legal authority for his claim that the trial court was immediately required to review and address his motion outside of citing to the Fourteenth Amendment. Therefore, his claim is abandoned. *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009). And, even if we address this due process claim, the court afforded defendant the opportunity to be heard when it took up his motion and he did not respond. Further, the trial court's denial of the defendant's motion to dismiss was proper for the reasons it stated on the record. "Opening . . . statements are not evidence." *People v Bailey*, 451 Mich 657, 681; 549 NW2d 325 (1996), amended 453 Mich 1204 (1996); see also M Crim JI 3.5(5) ("The lawyers' statements and arguments . . . are not evidence.") And the trial court so instructed the jury. Further, we note that defendant's intent as evidenced by his police statement was to "strike/knock out" the victim to silence her, which was his motive. *People v Kuhn*, 232 Mich 310, 312; 205 NW 188 (1925) ("A motive is an inducement for doing some act; it gives birth to a purpose. The resolve to commit an act constitutes the intent." Defendant has not established that he is entitled to appellate relief.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL – FAILURE TO EXPEDITE THE MOTION TO DISMISS AND FAILURE TO FILE AN INTERLOCUTORY APPLICATION FOR LEAVE TO APPEAL

---

[7] The court was handed the motion at the start of the second day of trial and had not had an opportunity to read it. Nevertheless, the court said that it would take it up at the time it had an opportunity to address it. Defendant did not object. Because defendant's negligence contributed to the alleged error, he is not entitled to relief. *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003) ("An appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence.")

Defendant also argues that defense counsel was ineffective for failing to expedite his pro se motion to dismiss and for failing to assist him with an interlocutory appeal. We disagree.

Defendant did not file a motion for a new trial or *Ginther* hearing in the trial court on these grounds, and his unsuccessful motion for a remand in this Court was not based on defense counsel's failure to further defendant's motion or assist with an interlocutory appeal. Accordingly, this issue is unpreserved. See *Abcumby-Blair*, 335 Mich App at 227; *Heft*, 299 Mich App at 80.

A defendant "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant must also establish the factual predicate of his claim. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). We then evaluate "whether the trial attorney's acts or omissions were outside the wide range of professionally competent assistance." *People v Green*, 322 Mich App 676, 684; 913 NW2d 385 (2018) (quotation marks and citation omitted), overruled in part on other grounds by *People v Peeler*, 509 Mich 381 (2022). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

To the extent that defendant's argument rests on the assumption that defense counsel's limited concession of defendant's guilt during opening statements was a structural error, we disagree for the reasons we have already discussed. Concerning defendant's claim that defense counsel was ineffective for failing to expedite his motion to dismiss, defendant cannot establish that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. The trial court denied defendant's pretrial motion to suppress his police interview statements. Again, therein, defendant explained that after the victim rejected his request to give him $800 and the keys to her vehicle so that he could leave town. She also cursed at him and told him to leave her home. He left, but went to the garage, retrieving a wooden handle from a sledgehammer or axe. He then returned to the victim before repeatedly striking her in the head and chest. Defendant, who was attempting to "knock the air out of her," recognized that he hit her "too many" times and "hurt her really bad." Defendant "hope[d]" that she was still alive, but he did not know if she was, even though he said that she appeared to be breathing when he left. At trial, defense counsel strategically offered a limited concession of guilt to a lesser offense in an attempt to persuade the jury to reject the prosecution's theory that defendant intended to murder the victim. There is no evidence that, in pursuing this strategy, defense counsel chose to override defendant's expressed desire to maintain his innocence. In fact, defendant refused to participate in certain proceedings and refused to speak with defense counsel after filing his motion. Because defense counsel's strategy to concede defendant's guilt to a lesser offense in hopes of avoiding conviction of AWIM did not constitute ineffective assistance, the trial court properly denied defendant's motion to dismiss. Further, defendant did not urge counsel to insist that the court decide his in pro se motion immediately upon its presentation, defendant has not demonstrated that an earlier decision would have gone in his favor.

Nor was defense counsel ineffective for failing to assist defendant in filing an interlocutory appeal challenging the trial court's denial of his pro se motion to dismiss. Defendant asserts that

if defense counsel had assisted him in this regard, "there would have been the attorney-client communication and trust necessary to ensure [defendant's] sixth and fourteenth amendment Constitutional rights at trial." However, nothing in the record indicates that defendant communicated to defense counsel that he wished to file an interlocutory appeal from the trial court's denial of his motion. To the contrary, defendant stopped communicating with defense counsel after he filed his motion and refused to meet with him. Defendant therefore failed to establish the factual predicate for this claim of ineffective assistance. See *Putman*, 309 Mich App at 248. And, in any event, for the reasons stated by the trial court in denying defendant's pro se motion to dismiss, it would have been meritless. Because an interlocutory appeal would not have been successful, defendant cannot show that defense counsel provided ineffective assistance by failing to pursue one. *Putman*, 309 Mich App at 248. For these reasons, we reject defendant's ineffective-assistance-of-counsel claims.

## V. MOTION TO SUPPRESS

Defendant argues that the trial court erred by denying his motion to suppress the recording of his interview with Officers Primeau and Sleeter on the ground that the officers violated his constitutional right to remain silent. We disagree.

Defendant preserved this issue by filing a motion to suppress his statement, which, following a *Walker*[8] hearing, the trial court denied. *People v McCrady*, 244 Mich App 27, 29; 624 NW2d 761 (2000). We review de novo "a trial court's decision on a motion to suppress," but we review "all underlying factual findings for clear error." *People v Stewart*, 512 Mich 472, 480; 999 NW2d 717 (2023). Clear error exists if, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made." *Id.*

In this case there was no dispute that defendant was under custodial interrogation at the time of his interview. At issue is whether Primeau's and Sleeter's questioning violated defendant's right to remain silent.

The United States and Michigan Constitutions guarantee a criminal suspect's right against compelled self-incrimination. US Const, Am V; Const 1963, art 1, § 17. "[E]very person subject to interrogation while in police custody must be warned, among other things, that the person may choose to remain silent in response to police questioning." *People v Shafier*, 483 Mich 205, 212; 768 NW2d 305 (2009). Accordingly, "if a person chooses silence over speech . . . the police must scrupulously honor the right to remain silent." *People v Williams*, 275 Mich App 194, 198; 737 NW2d 797 (2007). "Once a suspect invokes his right to remain silent . . . , police questioning must cease unless the suspect affirmatively reinitiates contact." *People v Tanner*, 496 Mich 199, 208; 853 NW2d 653 (2014). "The police fail to scrupulously honor a suspect's invocation of the Fifth Amendment right by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014) (quotation marks and citation omitted). "If the police continue to interrogate the defendant after he has invoked his right to remain silent, and the defendant confesses as a result of that interrogation, the confession is

---

[8] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

inadmissible." *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013) (quotation marks omitted). "Non-volunteered statements made during custodial interrogations are admissible only if a defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *White*, 294 Mich App at 627. A defendant's invocation of his right to remain silent must be unequivocal and unambiguous. See *Berghuis v Thompkins*, 560 US 370, 381-382; 130 S Ct 2250, ; 176 L Ed 2d 1098 (2010).

This Court has distinguished between continued interrogation and other questions or statements by law enforcement:

> [I]n general, an officer's statements that provide a defendant with information about the charges against him, about inculpatory evidence located by the police, or about statements made by witnesses or codefendants, which allow a defendant to make an informed and intelligent reassessment of his decision whether to speak to the police, do not constitute interrogation. [*People v White*, 294 Mich App 622, 630; 823 NW2d 118 (2011), aff'd 493 Mich 187 (2013).]

When assessing the voluntariness of a defendant's statement, we consider the totality of the circumstances surrounding the defendant's statement in light of the following factors:

> "[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse." [*People v Sexton (After Remand)*, 461 Mich 746, 753; 609 NW2d 822 (2000), quoting *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988) (alteration in original).]

In this case, the video-recorded interview did not indicate that the police subjected defendant to continued interrogation after he invoked his right to remain silent, until he expressed some willingness to talk and reaffirmed his desire to speak. Initially, upon being advised of his *Miranda*[9] rights, defendant unequivocally and unambiguously refused to waive them. Trooper Primeau then responded: "No," and, after a slight hesitation, asked "how come?"[10] Defendant quickly replied: "That's a question." At that point, Detective Sleeter said. "Okay. Fair point. You – you don't want to talk to us. You know, that's your right. That's why we read 'em to you. This is Trooper Primeau; ah, I'm Detective Sleeter of the Michigan State Police. Um, so we came, we–we wanted to talk to you about that. You do have the right to say no, if that's your choice.

---

[9] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[10] Primeau later testified this was an effort to ensure that defendant understood his rights.

Then that's your right and we'll stop right there, sir." Unprompted, defendant thereafter asked, if they might proceed with him determining whether to "pass or play" based on the questions asked. The officers agreed, but only after again informing defendant of his rights and having him acknowledge that he was waiving his right to remain silent to the extent that he agreed to proceed with the questioning on a pass-or-play basis. As the interview continued, the officers honored defendant's requests to not answer specific questions.

The record clearly indicates that the officers' statements after defendant initially invoked his right to remain silent were intended to provide defendant with information about his arrest and help him make an informed decision whether to speak, see *White*, 294 Mich App 630, and were not persistent efforts to wear defendant down or change his mind, see *Henry*, 305 Mich App at 145. It is also clear that the officers' questions regarding the assault and investigation ceased after defendant initially refused to answer and only resumed after defendant affirmatively reinitiated contact by suggesting "pass or play" questioning. See *Tanner*, 496 Mich at 208. Accordingly, the trial court did not clearly err by finding that the police scrupulously honored his right to remain silent.

Defendant also cannot establish that his statements to Trooper Primeau and Detective Sleeter were not voluntary. See *Sexton*, 461 Mich at 753. Defendant was over 60 years old at the time of trial and had attended some college. The challenged interview was the first time he spoke with anyone about the assault or attendant criminal charge against him. Defendant acknowledged that he had an extensive criminal history, including multiple felony convictions, and that he had been informed of his *Miranda* rights in each instance. At the time of the interview, defendant had been in jail for less than 24 hours, had been given food and water, and did not appear to be deprived of sleep, or under the influence of any substances. Defendant himself testified that he felt physically and mentally well during the interview. Defendant denied that he suffered any abuse or threats during the interview, and Detective Sleeter denied using any force, coercion, trickery, or deceit. Moreover, the law enforcement officers repeatedly informed defendant of his right to refuse to answer questions before asking him about the assault. Our review of the interview video recording and the hearing testimony reflects that defendant freely spoke to the police. For these reasons, the trial court did not err when it denied defendant's motion to suppress.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick

-11-